■ MARK E. CHABICA, Respondent, v HAROLD SCHNEIDER, Appellant. [624 NYS2d 271] —In an action to recover damages for medical malpractice, the defendant appeals from (1) a judgment of the Supreme Court, Dutchess County (Beisner, J.), dated September 4, 1992, which, *inter alia,* upon a jury verdict, is in favor of the plaintiff and against him awarding damages, and (2) an amended judgment of the same court,

dated January 13, 1993, which, *inter alia,* is in favor of the plaintiff and against him awarding damages.

Ordered that the appeal from the judgment dated September 4, 1992 is dismissed, without costs or disbursements; and it is further,

Ordered that the amended judgment dated January 13, 1993, is reversed, without costs or disbursements, the judgment dated September 4, 1992, is vacated, and a new trial is granted.

The judgment dated September 4, 1992 was superseded by the amended judgment dated January 13, 1993. No appeal lies from a judgment that has been superseded by an amended judgment, and accordingly, the defendant's appeal from the judgment dated September 4, 1992, is dismissed *(see, Van Scooter v 450 Trabold Rd.,* 206 AD2d 865).

Although we disagree with the defendant's contention that the jury verdict was based on legally insufficient evidence *(see, Cohen v Hallmark Cards,* 45 NY2d 493, 499) or, that it was against the weight of the evidence *(see, Nicastro v Park,* 113 AD2d 129, 134), we agree that several erroneous rulings by the trial court require a new trial.

The plaintiff commenced the instant malpractice action against the defendant after he sustained a permanent, partial loss of vision in his left eye allegedly as a result of the defendant's negligence in performing surgery to remove a growth from the plaintiff's eyelid. According to the plaintiff, the defendant committed malpractice when he injected a local anesthetic into his eyeball, rather than his eyelid, and the anesthesia caused damage to his optic nerve. During his direct testimony, the plaintiff testified that on January 19, 1988, the day after the surgery, he had a conversation with the defendant at the defendant's office regarding the reasons for his partial loss of vision, and the defendant told him that somehow some of the anesthesia must have entered the eyeball itself. On cross-examination, the plaintiff stated that for about one or two weeks after the surgery, he had kept a personal diary in which he had entered notes regarding his contacts with the defendant, including the January 19th office visit and that he had "looked at" and "read" those notes immediately prior to trial. The trial court denied the defense counsel's application to inspect those notes which had been referred to by the plaintiff. This was error.

Although the plaintiff never explicitly stated that he had used the subject notes to refresh his recollection with respect

to the conversation in which the defendant had purportedly told him that the anesthesia must have entered the eyeball, it is undisputed that the plaintiff had reviewed those notes for the express purpose of preparing for his testimony at the trial. Even if the plaintiff never used the words, "refresh my recollection", it is quite clear that the sole object and ultimate goal of reading the notes immediately prior to trial was to refresh his memory. Accordingly, the defendant was entitled to have the diary containing the notes made available to him for inspection and use upon cross-examination *(see, Grieco v Cunningham,* 128 AD2d 502; *Rouse v County of Greene,* 115 AD2d 162; Richardson, Evidence § 467, at 457-458 [Prince 10th ed]).

In addition, during his cross-examination of the defendant, the plaintiff's counsel questioned the defendant with respect to certain statements contained in a medical article written by an admitted authority in the field of intraocular injections. However, when, on redirect examination, the defense counsel attempted to question the defendant about the same article, the trial court ruled that he could not do so. While it is true that the extent of redirect examination is generally left to the sound discretion of the trial court *(see, People v Melendez,* 55 NY2d 445, 451), it was an improvident exercise of discretion to bar the defense counsel from using the article on his redirect examination of the defendant. It is well settled that "[w]here only a part of a statement is drawn out on cross-examination, the other parts may be introduced on redirect examination for the purpose of explaining or clarifying that statement" *(People v Torre,* 42 NY2d 1036, 1037; *see, People v King,* 197 AD2d 440; *People v Thompson,* 173 AD2d 511, 512; Richardson, Evidence § 523, at 515 [Prince 10th ed]).

Since this case must be sent back for a new trial, we note that the court improperly refused to allow the defense counsel to impeach the credibility of the plaintiff's expert witness through use of his prior testimony at a hearing held by the court to determine whether the plaintiff's expert could render an opinion as to the cause of the plaintiff's loss of vision *(see,* Richardson, Evidence § 501, at 486-487 [Prince 10th ed]).

In light of this result, we need not reach the issue of whether the jury's award of damages was excessive. Balletta, J. P., O'Brien, Thompson and Ritter, JJ., concur.