HINKLE et al., Appellants,

v.

CLEVELAND CLINIC FOUNDATION, Appellee, et al.

[Cite as *Hinkle v. Cleveland Clinic Found.*, 159 Ohio App.3d 351, 2004-Ohio-6853.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 83721.

Decided Dec. 16, 2004.

352

354

356

358

Becker & Mishkind Co., L.P.A., Michael F. Becker, and David A. Kulwicki, for appellants.

Anna M. Carulas; Roetzel & Andress, Ingrid Kinkopf–Zajac, and Douglas G. Leak, for appellee.

Sean C. Gallagher, Judge.

{¶ 1} Plaintiffs-appellants, Mary Napier, the guardian of Lisa Hinkle; Lisa Hinkle; Brian Hinkle Sr.;[1] Brian Hinkle Jr.; and Beau Hinkle (collectively "appellants"), appeal the trial court's decision to enter judgment for defendant-appellee, the Cleveland Clinic Foundation ("the Clinic"), upon a jury verdict.[2] Finding no error in the proceedings below, we affirm.

{¶ 2} This is a tragic case involving a mother of two minor children. On March 8, 1997, while at home, Lisa Hinkle suffered a severe headache, sudden seizure, and loss of consciousness. Lisa was taken to Akron City Hospital Emergency Room, where tests revealed an extensive subarachnoid hemorrhage, a ruptured basilar tip artery aneurysm, and two bilateral internal carotid artery aneurysms. Lisa was transferred to the Cleveland Clinic on March 9, 1997, because Akron City Hospital was not equipped to handle the required surgery.

{¶ 3} On March 10, 1997, Lisa underwent brain surgery to repair the ruptured basilar tip artery aneurysm and to clip one of the internal carotid aneurysms. The surgery was performed successfully by Dr. Juong Lee, and she was then transferred to the neurology intensive-care unit. Thereafter, Lisa was under the care of two attending physicians employed by the Clinic: Dr. Lee, a board-certified neurosurgeon, and Dr. John Andrefsky, a board-certified neurologist, as well as numerous residents, fellows, and nurses.

{¶ 4} Lisa did well for the first few days after surgery and was monitored closely for the development of any complications. Vasospasm, an involuntary contraction of arteries supplying blood to the brain, is a known complication following a subarachnoid hemorrhage and can occur soon after surgery or as late

---

1. Brian Hinkle Sr.'s individual claim was voluntarily dismissed by him prior to trial.

2. All other defendants were voluntarily dismissed by appellants prior to trial.

as two weeks following surgery. Lisa developed this condition; however, the parties disputed when vasospasm set in.

{¶ 5} Early on, Lisa's test results demonstrated evidence of sonographic vasospasm, but she remained asymptomatic and stable. After Lisa became intermittently symptomatic from the vasospasm, "triple-H" therapy was initiated. Triple–H therapy includes (1) hypervolemia, extra intravascular volume; (2) hypertension, heightened blood pressure; and (3) hemodilution, thinning of the blood. It has a 60 percent success rate. Initially, Lisa responded well to the triple-H therapy; however, she began to develop respiratory problems on March 20. On March 22, Lisa suffered a massive stroke to half of her brain. Eventually, a hemicraniectomy was necessary to prevent herniation and death. Appellants alleged that the Clinic doctors negligently failed to timely and properly administer triple-H therapy. Appellants alleged, in addition, that the negligent delay and negligent failure to maintain the therapy at adequate levels directly and proximately caused Lisa to suffer a massive stroke and all resulting injuries. At trial, appellants presented the testimony of two qualified medical experts: Dr. David Rutberg, a board-certified neurosurgeon, and Dr. Frank Booth, a board-certified critical-care specialist. In addition, appellants presented several lay witnesses and three damages experts.

{¶ 6} The Clinic presented the expert testimony of two medical doctors to address liability issues: Dr. Robert Harbaugh, a board-certified neurosurgeon, and Dr. Stephen Mayer, a board-certified neurologist. Further, Dr. Lee and Dr. Andrefsky, Lisa's attending physicians, offered expert opinions.

{¶ 7} After short deliberations, the jury returned a unanimous verdict in favor of the Clinic. The jury found that appellants had failed to prove that the Clinic did not exercise ordinary, reasonable care in the care and treatment of Lisa. As a result, the jury never reached the issues of proximate cause or damages. Appellants timely appeal, advancing eight assignments of error for our review.

{¶ 8} "I. The trial court erred in permitting two nonparty witnesses to sit at counsel table, not subject to sequestration."

{¶ 9} Appellants argue that the trial court erred when it allowed both Dr. Lee and Dr. Andrefsky to sit at the trial table with the Clinic's attorneys. Appellants argue that although Dr. Lee is an employee and representative of the Clinic pursuant to Evid.R. 615(B)(2), Dr. Andrefsky is not, and therefore his exclusion is mandatory under Evid.R. 615(A). The Clinic argues that Dr. Andrefsky was found by the court to be essential to the presentation of the party's cause pursuant to Evid.R. 615(B)(3) and thus exempt from the mandatory exclusion order.

{¶ 10} Evid.R. 615(A) states: "Except as provided in division (B) of this rule, at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses * * *." Subsection (B) states: "This rule does not authorize the exclusion of any of the following persons from the hearing: * * * (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause * * *."

{¶ 11} While exclusion is generally mandatory, the court has discretion to determine which persons' presence is essential to the presentation of a party's cause. *State v. Reyes* (Dec. 15, 1983), Cuyahoga App. No. 46888, 1983 WL 2919. However, it is the burden of the party opposing the exclusion to convince the court to exercise its discretion and allow the witness to remain at the trial table. See *State v. Baker* (Dec. 8, 1983), Cuyahoga App. No. 46743, 1983 WL 2877, quoting *Government of the Virgin Islands v. Edinborough* (1980), 625 F.2d 472.

{¶ 12} In the instant case, the Clinic argued that both doctors' actions were being called into question and their presence was needed to assist in the defense of their actions. Appellants argued that it was unfair for both to sit at the table, that neither was a named defendant, and that they would have an unfair advantage when testifying as experts in the case.

{¶ 13} We review the decision by the trial court to allow two nonparty witnesses to sit at the table under an abuse-of-discretion standard. In order to find an abuse of discretion, we must find that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Orange Village v. Tri–Star Dev. Co.* (Mar. 15, 2001), Cuyahoga App. No. 77358, 2001 WL 259190. The trial court allowed both doctors to sit: Dr. Lee pursuant to Evid.R. 615(B)(2) and Dr. Andrefsky pursuant to Evid.R. 615(B)(3). We find no abuse of discretion.

{¶ 14} Appellants' first assignment of error is overruled.

{¶ 15} "II. The trial court erred in refusing to strike prospective jurors for cause despite their admissions of bias in favor of defendant-appellee and in denying *voir dire* despite further indicia of bias disclosed in jury questionnaires."

{¶ 16} Appellants argue that the trial court acted unreasonably and with prejudice when it failed to remove two prospective jurors for cause and did not allow appellants' attorney to inquire further after the jurors were rehabilitated. Specifically, appellants complain that prospective jurors Higgins, an attorney, and Brugger, a doctor, admitted to having professional relationships with the Clinic and a bias in favor of the Clinic. The Clinic argues that both individuals were

rehabilitated during their questioning and should not have been dismissed for cause. We agree.

{¶ 17} The Supreme Court of Ohio has stated: "Trial courts have discretion in determining a juror's ability to be impartial. R.C. 2313.42(J) contemplates that 'good cause' exists for removal of a prospective juror when 'he discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court.' A prospective juror who has been challenged for cause should be excused 'if the court has any doubt as to the juror's being entirely unbiased.' R.C. 2313.43. However, a 'ruling on a challenge for cause will not be disturbed on appeal unless it is manifestly arbitrary * * * so as to constitute an abuse of discretion.' *State v. Tyler* (1990), 50 Ohio St.3d 24, 31, 553 N.E.2d 576, 587." (Citations omitted.) *State v. Nields* (2001), 93 Ohio St.3d 6, 20–21, 752 N.E.2d 859.

{¶ 18} Further, the Supreme Court of Ohio has indicated that because the trial court has the opportunity to observe the demeanor of the prospective juror and evaluate firsthand the sincerity of the responses to the questions, the trial court's position is of considerable significance in the appellate review of its decision. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.

{¶ 19} In this case, although both prospective jurors expressed the view that they would lean in favor of the Clinic, both were later rehabilitated during questioning by the Clinic's counsel.

{¶ 20} The Clinic's counsel asked Mr. Higgins: "So if it is not an ethical conflict, given what we talked about before, you know nothing about the parties to this lawsuit, being a jurist of your background and so forth, and feeling you are a fair minded individual, do you believe you could be fair to both parties here?"

{¶ 21} Higgins answered: "Yes."

{¶ 22} Later, Clinic's counsel asked Dr. Brugger: "My question for you is, since you do not know the folks here in this courtroom, do you believe looking at this, and given that you are not per se a specialist in the actual issues of this case, do you believe that you could be a fair minded person and listen to the evidence that's presented in this case and come to a conclusion?"

{¶ 23} Dr. Brugger answered: "Yes."

{¶ 24} The trial court was in the best position to observe the sincerity and demeanor and body language of both prospective jurors, Higgins and Brugger, to determine their suitability as jurors. In this case, neither prospective juror had a personal relationship with either of the Clinic's doctors, unlike the juror in *McGarry v. Horlacher*, 149 Ohio App.3d 33, 2002–Ohio–3161, 775 N.E.2d 865, who had a physician-patient relationship with the defendant doctor. Therefore, we

find that the trial court did not abuse its discretion in making this determination, since both prospective jurors expressed that they could be fair to both sides.

{¶ 25} Additionally, "[t]he scope of voir dire is within the trial court's discretion and varies depending on the circumstances of each case. Any limits placed thereon must be reasonable." (Citation omitted.) *State v. Bedford* (1988), 39 Ohio St.3d 122, 129, 529 N.E.2d 913. Accordingly, "no prejudicial error can be assigned to the examination of veniremen in qualifying them as fair and impartial jurors unless a clear abuse of discretion is shown." *State v. Cornwell* (1999), 86 Ohio St.3d 560, 565, 715 N.E.2d 1144. The transcript shows that the trial court was not unduly restrictive and thus did not abuse its discretion when it did not allow appellants' counsel to inquire further after the prospective jurors were rehabilitated by the Clinic's counsel. To allow otherwise would encourage an endless voir dire with no real progress.

{¶ 26} In any event, appellants used peremptory challenges to remove both Higgins and Brugger as jurors. Any claimed prejudice regarding these prospective jurors played no role in this case. In addition, there is nothing in the record indicating the replacement jurors had any bias or prejudice toward the appellants. Further, there is no evidence in the record that the failure to use challenges for cause unfairly prejudiced appellants' use of peremptory challenges. Therefore, the appellants were not prejudiced. Appellants' second assignment of error is overruled.

{¶ 27} "III. The trial court erred in permitting defendant-appellee to abuse the learned treatise exception to the hearsay rule."

{¶ 28} The admission or exclusion of evidence is within the broad discretion of the trial court. *State v. Allen* (1995), 73 Ohio St.3d 626, 633, 653 N.E.2d 675. The trial court's ruling will not be reversed on appeal absent a clear abuse of discretion that materially prejudices the party. *State v. Kniep* (1993), 87 Ohio App.3d 681, 685, 622 N.E.2d 1138, citing *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 224 N.E.2d 126. We will not substitute our judgment for that of the trial court, but we will defer to a judgment that is reasonable under the circumstances of the case. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.

{¶ 29} First, appellants argue that the trial court abused its discretion when it allowed the Clinic's witnesses to read extensive portions of learned treatises during their direct examinations. The Clinic argues that the learned treatises were not used during direct examination of their witnesses, but rather during redirect. Further, the Clinic argues that appellants "opened the door" for the use of learned treatises when they used several portions during the cross-examination of Dr. Mayer and Dr. Lee. The Clinic used the learned treatise on

redirect examination, not direct examination, only after portions of it were used on cross-examination by appellants. Thus, the question remains whether the same learned treatise can be used on redirect to rehabilitate an expert on subjects or issues related to the treatise that were used to impeach that expert on cross-examination.

{¶ 30} Evid.R. 706 states:

{¶ 31} "Statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art are admissible for impeachment if the publication is either of the following:

{¶ 32} "A) Relied upon by an expert witness in reaching an opinion;

{¶ 33} "B) Established as reliable authority (1) by the testimony or admission of the witness, (2) by other expert testimony, or (3) by judicial notice.

{¶ 34} "If admitted for impeachment, the statements may be read into evidence but shall not be received as exhibits."

{¶ 35} The learned-treatise exception to the hearsay rule set forth in Fed.Evid.R. 803(18) has no counterpart in Ohio Evid.R. 803. Thus, in Ohio, medical books or treatises are not admissible as substantive evidence. However, a learned treatise may be used for impeachment purposes to demonstrate that an expert witness is either unaware of the text or unfamiliar with its contents. *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532, paragraph two of the syllabus. Moreover, the substance of the treatise may be used only to impeach the credibility of an expert witness who has relied upon the treatise or has acknowledged its authoritative nature. Id. A learned treatise may not be admitted into evidence.

{¶ 36} In addition to the hearsay problem, learned treatises are not admissible because the opinions or conclusions contained therein are unverifiable, the technical language may not be understood by most jurors, the opinions or conclusions would be admitted into evidence without an oath of truthfulness, and the opposing party would be unable to cross-examine the person who gave the opinion or conclusion. *State v. Malroit* (Nov. 8, 2000), Medina App. No. 3034–M, 2000 WL 1675046; see, also, *Piotrowski*, 172 Ohio St. at 69, 15 O.O.2d 126, 173 N.E.2d 355.

{¶ 37} There is no Ohio authority supporting the use of a learned treatise on redirect examination to rehabilitate a witness that was impeached with the treatise. See *Toth v. Oberlin Clinic, Inc.*, Lorain App. No. 01CA007891, 2002–Ohio–2211, 2002 WL 987559. In *Toth*, the Ninth District Court of Appeals held that the Ohio Rules of Evidence did not entitle a party to read from the treatise on redirect in order to rehabilitate the expert.

{¶ 38} However, we do not agree with the Ninth District. We think fundamental fairness should play a role in how a trial court permits parties to use learned treatises. The court of appeals in Michigan explained it well when it said: "Consider, for example, a case in which the adverse party impeaches an expert witness using deceptively select portions of a learned treatise. Fairness would dictate that, following cross-examination, the offering party be allowed to ask the expert witness whether, perhaps, there was another section of the same learned treatise that supported the expert's opinion or if there were some reason why the passage at issue during cross-examination was not the basis for the expert's opinion.* * * [T]o allow partial and misleading testimony to go uncorrected works at cross-purposes with the jury's truth-finding function. To hold that an adverse party may use a learned treatise to impeach an expert witness during cross-examination without risk of contradiction by the party offering the witness' expert testimony would give the adverse party an unfair advantage in presenting evidence to the factfinder." *Hilgendorf v. Saint John Hosp. & Med. Ctr. Corp.* (2001), 245 Mich.App. 670, 703–704, 630 N.W.2d 356; see, also, *Chabica v. Schneider* (1995), 213 A.D.2d 579, 624 N.Y.S.2d 271 (where only a part of a statement is brought out on cross-examination, the other parts may be introduced on redirect examination for the purpose of explaining or clarifying that statement); *Rice v. Family Planning Clinic for Reproductive Health* (Apr. 7, 1993), Nashville App. No. 01–A–01–9210–CV–00391, 1993 WL 101862 (experts may cite other provisions of a treatise on redirect when their credibility has been attacked by the use of the same treatise on cross-examination).

{¶ 39} It is only fair to conclude that when an adverse party impeaches an expert during cross-examination, the expert may be rehabilitated during redirect examination using that same treatise. This is not to say that a party may use a learned treatise to rehabilitate an expert witness who was not impeached with the learned treatise during cross-examination. Furthermore, the use of a learned treatise on redirect should not go beyond the scope of the cross-examination. Again, a learned treatise is not to be used as substantive evidence; however, fairness dictates that the jury view statements in context.

{¶ 40} In each instance in the case at bar, the Clinic used the same learned treatise during redirect that was used on cross-examination and used it to rehabilitate the Clinic's expert by putting into context the impeaching statement. The trial court did not err.

{¶ 41} Next, appellants argue that allowing the Clinic to visually display the treatises to the jury was an abuse of discretion. We disagree.

{¶ 42} The last sentence of Evid.R. 706 states, "If admitted for impeachment, the statements may be read into evidence but shall not be received as exhibits."

"This restriction is designed to prevent the trier of fact from misunderstanding or misapplying the evidence as a result of its examination *in the jury room.*" (Emphasis added.) Weissenberger's Ohio Evidence 2004 Courtroom Manual, 334. The rule does not restrict how it should be read into evidence; it only prohibits its admission into evidence. Therefore, the trial court did not abuse its discretion when it allowed the Clinic to display and read the learned treatise to the jury.

{¶ 43} Finally, appellants argue that the trial court erred when it allowed the Clinic to read these treatises during opening and closing statements as if they were substantive evidence. The Clinic argues that it did not make improper comments about the medical literature during opening or closing statements and that appellants cannot demonstrate substantial injustice.

{¶ 44} The trial court erred by allowing both parties to quote extensively from several learned treatises as if they were substantive evidence. It is error for a court to permit counsel to read and comment upon matter not in evidence. *State v. Broady* (July 9, 1974), Franklin App. No. 74AP–7, 1974 WL 184207; citing *Union Cent. Life Ins. Co. v. Cheever* (1880), 36 Ohio St. 201; *Lambert v. Dally* (1972), 30 Ohio App.2d 36, 59 O.O.2d 29, 281 N.E.2d 857; and *Thompson v. Hauer* (1971), 30 Ohio App.2d 110, 59 O.O.2d 216, 283 N.E.2d 180. Nevertheless, because appellants were granted the same latitude during closing statements and quoted six different doctors' opinions from learned treatises that bolstered their position, we cannot say that the Clinic's improper use of learned treatises was prejudicial. Further, we cannot say that had the error not occurred, the result probably would have been different.

{¶ 45} Appellants' third assignment of error is overruled.

{¶ 46} "IV. Defendant-appellee created error by introducing evidence of collateral source in violation of an order in limine precluding same."

{¶ 47} Appellants argue that on three occasions, the Clinic violated the trial court's order that excluded evidence of collateral benefits. The Clinic responds that appellants had presented such evidence in their case in chief and, furthermore, that appellants never objected during trial to the Clinic's use of collateral-source evidence.

{¶ 48} The common-law collateral-source rule provides that "evidence of compensation from collateral sources is not admissible to diminish the damages for which a tort-feasor must pay for his negligent act." *Pryor v. Webber* (1970), 23 Ohio St.2d 104, 52 O.O.2d 395, 263 N.E.2d 235, paragraph two of the syllabus. Evidence of collateral benefits has the natural tendency to prejudice the jury and influence its verdict. Id. at 116, 52 O.O.2d 395, 263 N.E.2d 235. Accord *Thompson v. Shaffer* (Sept. 30, 1991), Trumbull App. No. 90–T–4469, 1991 WL

206626 ("The *Pryor* decision indicates that the admission of evidence in violation of the collateral source rule by its nature prejudices the jury and can be cured only by requiring a new trial").

{¶ 49} A review of the record indicates that the Clinic did not improperly refer to collateral benefits. Furthermore, appellants themselves referred to collateral benefits during their case in chief and failed to object when the Clinic inquired on cross-examination. "Under the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *State ex rel. Bitter v. Missig* (1995), 72 Ohio St.3d 249, 254, 648 N.E.2d 1355, citing *State ex rel. Fowler v. Smith* (1994), 68 Ohio St.3d 357, 359, 626 N.E.2d 950. Moreover, an appellate court need not consider an error that a party could have called to the trial court's attention but did not. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus; see, also, *Buchman v. Wayne Trace Local School Dist. Bd. of Edn.* (1995), 73 Ohio St.3d 260, 271, 652 N.E.2d 952 (litigant cannot procure a reversal of a judgment for an error for which the litigant was responsible).

{¶ 50} Appellants' fourth assignment of error is overruled.

{¶ 51} "V. The trial court erred in permitting expert testimony of a nonparty absent a report in contravention of Local Rule 21.1."

{¶ 52} Appellants argue that the trial court erred when it allowed Dr. Lee and Dr. Andrefsky to testify as experts when the Clinic failed to produce expert witness reports prior to trial in violation of Loc.R. 21.1. Appellants also allege that Dr. Mayer's and Dr. Harbaugh's reports were sparse and varied from their opinions at trial. The Clinic argues that Dr. Lee and Dr. Andrefsky were party physicians and thus exempt from Loc.R. 21.1. Alternatively, the Clinic argues that subsection C of Loc.R. 21.1 specifically allows a treating physician to produce the patient records in satisfaction of the requirements for a written report.

{¶ 53} Loc.R. 21.1 of the Cuyahoga County Court of Common Pleas grants the trial court discretion to determine whether a party has complied with the local rule and, in the absence of compliance, to exclude expert testimony. *Camastro v. Guyuron*, Cuyahoga App. No. 80915, 2003–Ohio–27, 2003 WL 60970, citing *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313.

{¶ 54} Loc.R. 21.1(B) states: "A party may not call a non-party expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel. * * * The report of a non-party expert must reflect his opinions as to each issue on which the expert will testify. A non-party expert will not be permitted to testify or provide opinions on issues not raised in his report."

{¶ 55} Loc.R. 21.1(C) states: "In the event the non-party expert witness is a treating physician, the Court shall have the discretion to determine whether the hospital and or office records of that physician's treatment which have been produced satisfy the requirements of a written report."

{¶ 56} As to Dr. Lee and Dr. Andrefsky, we find that Loc.R. 21(C) applies to exclude them from the expert-report requirement because they were the treating physicians. Furthermore, because Lisa's medical records were provided to appellants prior to trial and were clearly referred to throughout trial by both doctors, we find that the trial court did not abuse its discretion when it concluded that Lisa's hospital records satisfied the written-report requirement.

{¶ 57} As to Dr. Mayer and Dr. Harbaugh, we find that the trial court did not abuse its discretion when it allowed both to testify consistent with their expert reports.

{¶ 58} Appellants' fifth assignment of error is overruled.

{¶ 59} "VI. The trial court erred in refusing to permit plaintiffs-appellants to present rebuttal testimony."

{¶ 60} Appellants claim the trial court erred when it did not allow rebuttal testimony with regard to the Clinic's theories about sepsis and a third aneurysm. Appellants claim that these defense theories were a "calculated ambush" because these theories were added after their discovery depositions. The Clinic argues that no new evidence or testimony was presented during the Clinic's case in chief that warranted rebuttal testimony. Moreover, the issues of an infection and a third aneurysm were discussed before trial, during depositions, and during appellants' case in chief. The party with the burden of proof on an issue must present proof in that party's case in chief and can present evidence in rebuttal only to answer a new matter introduced by his adversary. *Cities Serv. Oil Co. v. Burkett* (1964), 176 Ohio St. 449, 27 O.O.2d 424, 200 N.E.2d 314; *O.F. Mehurin & Son v. Stone* (1881), 37 Ohio St. 49. See, also, R.C. 2315.01; *Phung v. Waste Mgt.* (1994), 71 Ohio St.3d 408, 410, 644 N.E.2d 286. Any relaxation of this rule is at the discretion of the trial court. R.C. 2315.01(A)(4); *Cities Serv.; O.F. Mehurin,* supra. An appellate court will not interfere with the discretion of the trial court in refusing to permit a plaintiff to offer as rebuttal evidence what should have been offered as evidence in chief. *Cook v. Williams* (1952), 92 Ohio App. 277, 49 O.O. 356, 108 N.E.2d 232. However, a party has an unconditional right to present rebuttal evidence on matters that are first addressed in the opponent's case in chief and should not be brought in the rebutting party's case in chief. *Phung v. Waste Mgt., Inc.,* 71 Ohio St.3d at 410, 644 N.E.2d 286, citing *Katz v. Enzer* (1985), 29 Ohio App.3d 118, 123, 29 OBR 133, 504 N.E.2d 427.

{¶ 61} "In order to establish a claim for medical malpractice, a plaintiff must demonstrate, by a preponderance of the evidence, (1) that there existed a duty on behalf of the physician-defendant to the plaintiff; (2) the standard of care recognized by the medical community; (3) the failure of the defendant to meet that standard of care; and (4) a causal link between the negligent act and the injuries sustained. *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127 [75 O.O.2d 184], 346 N.E.2d 673, paragraph one of the syllabus; see, also, *Roberts v. Ohio Permanente Med. Group* (1996), 76 Ohio St.3d 483, , 668 N.E.2d 480. A plaintiff is required to present expert testimony in order to demonstrate that the actions of a physician fell below the standard of care and that this breach was the cause of the injuries sustained. *Bruni,* 46 Ohio St.2d at 131–132 [75 O.O.2d 184], 346 N.E.2d 673." *Perla v. Cleveland Clinic Found.,* Cuyahoga App. No. 83058, 2004-Ohio-2156, 2004 WL 906115.

{¶ 62} Appellants were required to show a causal link between the doctors' actions and the injuries sustained. The appellants' attempted rebuttal testimony did not refute new evidence presented by the Clinic but concerned evidence introduced by the appellants in their own case in chief, which they had every opportunity to develop more fully in their original presentation. The trial court did not abuse its discretion by not allowing the appellants to put forth rebuttal evidence.

{¶ 63} Appellants' sixth assignment of error is overruled.

{¶ 64} "VII. The trial court erred in permitting improper argument and misrepresentations of counsel during trial."

{¶ 65} Appellants complain that the Clinic inappropriately disparaged appellants' counsel, as well as their experts, during closing arguments by referring to the doctors and attorney by their last names. Further, appellants allege that the Clinic misused the jury instructions and intentionally confused the jury about the law of the case. Finally, appellants argue generally that the Clinic's counsel acted improperly throughout the entire trial.

{¶ 66} In *AAA All City Heating, Air Conditioning & Home Improvement v. New World Communications of Ohio,* Cuyahoga App. No. 83334, 2004-Ohio-5591, 2004 WL 2361813, we recognized that "[g]reat latitude is afforded to counsel in presentation of closing argument to the jury. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph two of the syllabus. Control over the latitude allowed rests within the discretion of the trial court. *Hitson v. City of Cleveland* (Dec. 13, 1990), Cuyahoga App. No. 57741 [1990 WL 204337], 1990 Ohio App. LEXIS 5466. A reviewing court will not disturb the exercise of that discretion unless the record clearly demonstrates a highly improper argument that tends to inflame the jury. *Lance v. Leohr* (1983), 9 Ohio App.3d 297, 298 [9

OBR 544], 459 N.E.2d 1315; see, also, *Brooks v. Brost Foundry* (May 2, 1991), Cuyahoga App. No. 58065 [1991 WL 69341]. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore* [*v. Blakemore*, 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140]."

{¶ 67} Ordinarily, in order to support a reversal of a judgment on the ground of misconduct of counsel in his opening statement and closing argument to the jury, it is necessary that a proper and timely objection be made to the claimed improper remarks so that the court may take action thereon. *Hodorowski v. Rayfield* (July 24, 1997), Cuyahoga App. No. 71370. Therefore, unless counsel, in his opening and closing argument to the jury, grossly and persistently abuses his privilege, the trial court is not required to intervene sua sponte to admonish counsel and take curative action to nullify the prejudicial effect of counsel's conduct. Id. The determination of misconduct by counsel is within the sound discretion of the trial court. *Pierson v. Hermann* (1965), 3 Ohio App.2d 398, 400, 32 O.O.2d 533, 210 N.E.2d 893. Furthermore, "a judgment will not be reversed on the grounds of misconduct in closing arguments unless the circumstances are of such reprehensible and heinous nature as to constitute prejudice. *Plavcan v. Longo* (July 3, 1980), Cuyahoga App. No. 39964 [1980 WL 354402]." *Hitson,* supra.

{¶ 68} In this case, the Clinic's counsel referred to attorney Becker by his last name on three occasions and the doctors by their last names on one occasion. Appellants, however, failed to object.

{¶ 69} Additionally, appellants complain about the Clinic's reference to one of the doctors as a "smooth talker," as well as the statement that neither of the experts ever performed this type of treatment. Again, however, the appellants failed to object to the comments about which they now complain. Although the Clinic's statement that neither had performed this type of treatment was a misstatement of the facts, we are unable to conclude that the remarks of the Clinic's counsel set forth in opening statement and closing argument, though possibly improper, constituted a gross and persistent abuse of privileges and prevented appellants from receiving a fair trial.

{¶ 70} Appellants have failed to demonstrate to this court that their substantial rights were violated by comments made by the Clinic's counsel during opening and closing argument. The jury was properly instructed not to consider remarks made during closing argument as evidence in the case, and there has been no demonstration of prejudicial error. A presumption exists that the jury follows the instructions given by the trial court. *Pang,* supra. Thus, in the absence of a showing of prejudicial error, we find no abuse of discretion.

{¶ 71} Finally, this court has reviewed the entire record, as well as all arguments of counsel, and even though the remarks and opinions of the Clinic's counsel may have been improper at various times, there is no showing of any error prejudicial to appellants.

{¶ 72} Appellants' seventh assignment of error is overruled.

{¶ 73} "VIII. The trial court erred in giving the incomplete and misleading jury instructions."

{¶ 74} Appellants complain that the jury instructions were inadequate and misleading. Specifically, appellants argue that a complete definition of "ordinary care" was not given. Further, the appellants take issue with the jury instructions because they included the "different methods" and "bad result" instruction. Finally, appellants argue that it was error for the court not to instruct on "greater danger."

{¶ 75} Generally, a trial court should give requested instructions "if they are correct statements of the law applicable to the facts of the case." *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828. However, jury instructions must be viewed in their totality. *Margroff v. Cornwell Quality Tools, Inc.* (1991), 81 Ohio App.3d 174, 177, 610 N.E.2d 1006. If the totality of the instructions clearly and fairly expresses the law, a reviewing court should not reverse a judgment based upon an error in a portion of a charge. Id. A strong presumption exists in favor of the propriety of jury instructions. *Brooks v. Mihm* (May 3, 1995), Pickaway App. No. 93 CA 24, 1995 WL 264861. Instructions that, in their totality, are sufficiently clear to permit a jury to comprehend the relevant law will not cause a reversal upon appeal. *Margroff,* 81 Ohio App.3d at 177, 610 N.E.2d 1006.

{¶ 76} Furthermore, Civ.R. 51(A) states: "On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds for the objection." The party must object before the jury retires to deliberate. *Leber v. Smith* (1994), 70 Ohio St.3d 548, 552, 639 N.E.2d 1159; *Presley v. Norwood* (1973), 36 Ohio St.2d 29, 65 O.O.2d 129, 303 N.E.2d 81, syllabus.

{¶ 77} Pertaining to the issues raised on appeal, the only objection made by appellants before the jury retired was that the court failed to include the "greater danger" instruction of 1 Ohio Jury Instructions (1997), Section 7.10(4). We can find no case law to support the proposed jury instruction in a medical malpractice case; therefore, it was not error for the trial court not to include an instruction on "greater danger."

{¶ 78} Next, we review the remaining claims for plain error: "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus. Plain error is obvious and prejudicial error, neither objected to nor affirmatively waived, that, if permitted, would have a material adverse effect on the character and public confidence in judicial proceedings. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 209, 24 O.O.3d 316, 436 N.E.2d 1001.

{¶ 79} In this case, the trial court instructed:

{¶ 80} "Medical negligence is the failure to use ordinary skill, care, and diligence in a particular specialty. Every medical doctor is required to use ordinary skill, care, and diligence to avoid injuring their patient.

{¶ 81} "The standard of care is the degree to which a reasonably prudent medical doctor should exercise. Failure to follow an accepted standard of care constitutes negligence. The existence of a physician-patient relationship imposes upon the physician a duty to act as would a physician of ordinary skill, care, and diligence under like or similar conditions or circumstances. The standard of care is to do those things which such a physician would do and to refrain from doing those things that such physician would not do."

{¶ 82} Appellants argue that the court should have instructed separately on "ordinary care." Ordinary care is the care that a reasonably prudent person would use under the same or similar circumstances. 1 Ohio Jury Instructions (2004), Section 7.10(2). We find that the jury instructions clearly expressed the law and that a separate definition regarding ordinary care was unnecessary.

{¶ 83} Next, appellants argue that the "different methods" instruction should not have been included. We disagree.

{¶ 84} "By its very terms, in medical malpractice cases, the 'different methods' charge to the jury is appropriate only if there is evidence that more than one method of diagnosis or treatment is acceptable for a particular medical condition." *Pesek v. Univ. Neurologists Assoc.* (2000), 87 Ohio St.3d 495, 498, 721 N.E.2d 1011. In the case at bar, there was testimony that there were two methods of treatment for vasospasm: Triple–H therapy, according to appellants, as well as Nimodipine, according to the Clinic. In fact, the evidence revealed Nimodipine is the only FDA-approved method for treating vasospasm. Furthermore, there were different methods or ways to institute triple-H. Therefore, it was not error for the trial court to include an instruction on "different methods."

 {¶ 85} Finally, appellants argue that the "bad result" instruction should not have been included. Again, we disagree.

{¶ 86} The "bad result" instruction states, "The fact that the doctor's treatment did not bring about a cure does not by itself prove that the doctor was negligent." 3 Ohio Jury Instructions, Section 331.01(6). This is a case in which everyone agreed that a bad result happened. This was a basic instruction in a medical negligence case where a bad result occurred. The instruction was proper, and it did not mislead or confuse the jury.

{¶ 87} Appellants' eighth assignment of error is overruled.

Judgment affirmed.

TIMOTHY E. McMONAGLE, J., concurs.

COLLEEN CONWAY COONEY, P.J., concurs in judgment only.