JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant Sherman Levin appeals from both the trial court's dismissal of his complaint against defendants-appellees James and Ethyl Dickerson and the subsequent jury verdict in favor of the Dickersons on their counterclaim against him.
 {¶ 2} Levin raises six assignments of error in which he challenges several actions taken by the court during trial. He asserts the trial court abused its discretion by: 1) permitting the jurors to ask questions of his only witness; 2) posing its own questions to his only witness; 3) dismissing his complaint; 4) failing to permit the parties to present closing arguments; 5) neglecting to give final instructions to the jury; and, 6) usurping the jury's function with regard to the merits of the Dickersons' counterclaim.
 {¶ 3} After a review of the record, this court cannot find any of the trial court's actions warrant reversal. Therefore, Levin's assignments of error are overruled, and the trial court's decision and the jury's verdict are affirmed.
 {¶ 4} The record reflects the Dickersons rented a house they owned on Cedar Road in Cleveland Heights to Levin beginning in 1990. Initially, Levin rented the property pursuant to a written lease, but the lease expired two years later. Nevertheless, Levin continued his occupation of the premises. He paid rent to the Dickersons monthly, and also paid the utility bills.
 {¶ 5} Over the years of Levin's tenancy, the city of Cleveland Heights inspected the property for compliance with, inter alia, the municipal fire code. Often, the inspections indicated noncompliance. For instance, Levin tended to stack flammable materials in the area around the furnace. The city usually sent the citations for such code violations to the Dickersons, in spite of the fact that Levin was in possession of the premises.
 {¶ 6} In 2001, the Dickersons decided to sell the Cleveland Heights property. They offered it first to Levin, but he did not purchase it. Since he also refused to leave, they commenced an eviction action against him. Levin appeared in court with an attorney to contest the proceeding.
 {¶ 7} Eventually, on March 21, 2002 the Cleveland Heights Municipal Court issued a final judgment in favor of the Dickersons on their eviction action. The court issued notice to Levin of its decision. Levin took no action, however, to remove his personal belongings from the premises.
 {¶ 8} On April 9, 2002 the municipal court issued a writ of restitution directed to its bailiff with regard to the Cedar Road property. The court bailiff was "commanded to cause [Levin] to be forthwith removed from said premises, and the [Dickersons] to have restitution of the same by: Mon., 4/15/02 At 9:30 A.M." Notice of the order was taped to the front door of the house.
 {¶ 9} According to Mrs. Dickerson's trial testimony, upon receiving notice of the writ, she inquired of the city what her responsibilities were; she was informed that she should engage the services of a moving and storage company to be at the premises on the date stated, and the bailiff would fulfill the duties specified therein. She testified she did as she was instructed. She further testified that she was not personally present when the bailiff executed the writ.
 {¶ 10} According to the bailiff's statement of return, the writ was duly executed on April 15, 2002. The bailiff averred he carried one item to the moving truck, and "Whitworth Bros. Storage" removed the remainder of Levin's possessions. Levin was not present.
 {¶ 11} Since, to the Dickersons' knowledge, Levin had made no provision for his possessions, they paid the moving company to take them, and paid another company to store them at a nearby facility. Additionally, cleanup of the house and disposal of the trash cost them over $1500.00. Levin also had failed to pay the city for his March 2002 water and sewer use, so the Dickersons paid those debts.
 {¶ 12} On April 11, 2003, acting pro se, Levin filed the instant action against the Dickersons. Levin asserted that "as part of the eviction process, [the Dickersons] were required by law to safeguard [his] personal property," but that, when he retrieved it from storage, much of it was "missing and/or damaged." He presented a demand for money damages pursuant to claims of conversion, unjust enrichment, bailment, and negligence.
 {¶ 13} The Dickersons answered Levin's complaint and presented a counterclaim for the money they had expended as a result of the eviction. They attached copies of the invoices to the pleading.
 {¶ 14} The case eventually proceeded to a jury trial before a visiting judge. During his opening statement, Levin told the jury that many of his belongings had been damaged in the eviction. He stated he was "not saying the defendants did this themselves, but they hired these moving people to come in * * * [,]" which made them "liable for the damages that occurred." As his only witness, Levin called Marjorie Moon, Senior Property Inspector for the city of Cleveland Heights.
 {¶ 15} Moon testified that she had reviewed all the pertinent city documents relating to the Cedar Road property. She further testified she had visited the property in her official capacity on at least one occasion. Levin's direct examination of Moon focused only on whether the residence ever seemed to have been rat-infested.
 {¶ 16} When Levin concluded his direct examination, the trial court asked Moon some additional questions; she detailed the city's general eviction process. The trial court followed the same procedure after the Dickersons' attorney cross-examined the witness.
 {¶ 17} The court asked Moon, "[W]ho decide[ed] that in this case they need[ed] a moving company to move" Levin's things? She responded, "If the tenant has not made arrangements for a mover by that day [of the execution of the writ], then it becomes the responsibility of the [municipal] Court bailiff to make sure that part of the order was enforced." Furthermore, she stated that although the landlords in that situation might have to "pay the fee" for the first month, storage of the tenant's property "would be in the name in this case of * * * the plaintiff * * * because its his," and that Levin would be responsible for the storage fees.
 {¶ 18} The Dickersons posed an additional question, asking Moon if the writ "empowered" the moving company which assisted the bailiff to determine which items were movable and what was "junk." She answered affirmatively, indicating she believed that "garbage" need not be removed and that the tenant had the "responsibility to move his stuff."
 {¶ 19} At that point, the trial court asked the jurors to pose to Moon any questions they might have. During this lengthy interval, five of the jurors eventually did so.
 {¶ 20} Levin then testified in his own behalf. At the conclusion of his case, the trial court directed a verdict in favor of the Dickersons on his claims. The court stated, in effect, that Levin's claims did not apply to the Dickersons; rather, the claims, if any, applied to the moving and storage companies. For the record, the Dickersons' attorney indicated he was prepared to move for a directed verdict on Levin's claims, but the trial court anticipated the motion.
 {¶ 21} The case proceeded to trial on the Dickersons' counterclaims. Mrs. Dickerson testified about the fees incurred on Levin's behalf, and verified the relevant documents, which the court ultimately admitted into evidence. On cross-examination, Levin raised no challenge to this evidence.
 {¶ 22} Thus, at the conclusion of the Dickersons' case, the trial court ordered their attorney "to add up those figures" and decided to present to the jury a "single action verdict" form to determine if the Dickersons' should be awarded judgment on their counterclaim against Levin in the total amount of $3116.68. The Dickersons' attorney asked the court if closing argument would be presented; the court responded negatively, but requested Levin to place on the record an argument against the dismissal of his claims.
 {¶ 23} The jury returned a verdict for the Dickersons in the amount of $3116.68.
 {¶ 24} Levin, now represented by counsel on appeal, presents the following assignments of error for review:
 {¶ 25} "I. The trial court abused its discretion in allowing jurors to conduct oral examination of a witness without following the procedural requirements set forth in State v. Fisher
(2003), 99 Ohio St.3d 127.
 {¶ 26} "II. The trial court committed prejudicial error in its questioning of the witness Marjorie Moon and by making improper comments as to the witness' credibility in the presence of the jury.
 {¶ 27} "III. The trial court erred by dismissing plaintiff's complaint.
 {¶ 28} "IV. The trial court erred in refusing to allow the plaintiff to provide closing argument to the jury.
 {¶ 29} "V. The trial court committed reversible error by failing to instruct the jury as to the elements of defendants' counterclaims against plaintiff.
 {¶ 30} "VI. The trial court erred by failing to submit the issue of defendants' counterclaims to the jury for determination."
 {¶ 31} In his first, second, fourth, fifth and sixth assignments of error, Levin asserts that several aspects of the manner in which the lower court conducted the trial proceedings were improper.
 {¶ 32} Specifically, he contends that the court should have followed the procedure set forth by the Ohio Supreme Court inState v. Fisher, supra, prior to permitting the jurors to ask questions of his witness, that the court's own questions of Moon violated Evid.R. 801(C), that the court prejudiced the jury against him by dismissing his case in the jury's hearing, that the court ignored the dictates of R.C. 2315.01(F) and Civ.R. 50(A) when it bypassed closing argument and jury instructions as to the Dickersons' burden of proof on their counterclaim, and, finally, that the court "usurped" the jury's function by giving the jury the verdict form it did.
 {¶ 33} Levin acknowledges in making these contentions that he failed in each instance to raise an objection to the trial court's actions. Schade v. Carnegie Body Co. (1982),70 Ohio St.2d 207. He argues that his failure is excusable pursuant to the doctrine of "plain error." This court disagrees.
 {¶ 34} The "plain error" doctrine generally pertains only to criminal cases. It is embodied in Crim.R. 52, and is a high standard to meet. See, State v. Long (1978), 53 Ohio St.2d 91.
 {¶ 35} Since the Ohio Civil Rules do not contain an equivalent, an even higher standard exists in the context of a civil trial. Thus, in Goldfuss v. Davidson, 79 Ohio St.3d 116,1997-Ohio-401, paragraph one of the syllabus, the supreme court held as follows:
"In appeals of civil cases, the plain error doctrine is notfavored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects thebasic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlyingjudicial process itself. [Citations omitted.]"
(Emphasis added.)
 {¶ 36} Recently, the supreme court reiterated the foregoing rule of law in Gable v. Village of Gates Mills,103 Ohio St.3d 449, 2004-Ohio-5719. This court is bound by the supreme court's pronouncements, and an analysis of the proceedings in this case does not support a conclusion that any of the trial court's actions and omissions amounted to plain error.
 {¶ 37} First, the procedure for jury questions of witnesses as set forth in State v. Fisher, supra, was intended to safeguard a criminal defendant's right to a fair trial; the state in such cases has the burden to prove guilt beyond areasonable doubt. In this case, the trial court's failure to follow the same procedure cannot be deemed "plain error" as that term is defined in the context of a civil trial, especially since none of the jurors' questions concerned the merits of either party's case.
 {¶ 38} Second, the trial court's questions of Moon cannot be deemed "plain error" because Evid.R. 614(B) authorized the exchange and because Levin "opened the door" to testimony he now asserts constituted improper "hearsay" during his direct examination of his witness. AAA All City Heating, AirConditioning Home Improvement v. New World Communications ofOhio, Inc., Cuyahoga App. No. 83334, 2004-Ohio-5591.
 {¶ 39} Similarly, Civ.R. 50(A) does not forbid the trial court from dismissing a plaintiff's case while the jury is present. At the commencement of the proceedings, the court informed the jury of the separate claims the parties presented against each other, and after dismissing Levin's claims, indicated the Dickersons still had to provide evidence on their counterclaim.
 {¶ 40} The jury reasonably could interpret the court's comments to mean that the Dickersons had the burden to prove Levin owed them money for the costs they incurred related to the personal property he left at the premises. Levin's cross-examination of Mrs. Dickerson, however, presented no challenges to her evidence. Hinckley Roofing, Inc. v. Motz,
Medina App. No. 04CA0055-M, 2005-Ohio-2404.
 {¶ 41} Under these circumstances, the trial court did not commit "plain error" when it omitted either closing arguments or jury instructions concerning the elements of a cause of action for money due for services rendered. Hinkle v. Cleveland ClinicFound., 159 Ohio App.3d 351, 2004-Ohio-6853.
 {¶ 42} For the foregoing reasons, Levin's first, second, fourth, fifth and sixth assignments of error are overruled.
 {¶ 43} Levin additionally asserts the trial court improperly dismissed his claims pursuant to Civ.R. 50(A).
 {¶ 44} Pursuant to Civ.R. 50(A), a motion for directed verdict is granted, if after construing the evidence most strongly in favor of the party against whom the motion is directed, "reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Goodyear Tire Rubber Co. v. Aetna Cas. Sur. Co.,95 Ohio St.3d 512, 2002-Ohio-2842, at ¶ 3. Motions for directed verdict present a question of law; the court must examine the evidence, but neither weigh it nor test the credibility of the witnesses. Wagner v. Roche Laboratories, 77 Ohio St.3d 116,119, 1996-Ohio-85. The question is whether there was sufficient material evidence presented at trial to create a factual question for the jury. Malone v. Courtyard by Marriott L.P.,74 Ohio St.3d 440, 445, 1996-Ohio-311.
 {¶ 45} In this case, although Levin argues he presented enough evidence to create a factual question on the issue of whether the Dickersons' were negligent by "hiring" a moving company which damaged his possessions, negligence requires the breach of a duty. Since the Cleveland Heights Municipal Court had relieved the Dickersons of any duty by issuing the writ of restitution to its bailiff, Levin's argument fails. See, e.g.,Bach v. DiCenzo, Cuyahoga App. No. 84396, 2005-Ohio-2611.
 {¶ 46} Similarly, the evidence demonstrated the Dickersons had no access to Levin's property once the writ was issued; thus, they were not bailors. Ringler v. Sias (1980),68 Ohio App.2d 230.
 {¶ 47} Levin's witness explained her familiarity with the eviction process and indicated the Dickersons' lack of responsibility, as former lessors, to any possessions Levin had left on the premises. Levin neither raised any objections nor presented any evidence to the contrary. Therefore, the trial court did not commit plain error when it relied principally upon Moon's testimony to conclude Levin presented no evidence to create any factual issues for the jury. Hinckley Roofing, Inc.v. Motz, supra at ¶ 11.
 {¶ 48} Accordingly, Levin's third assignment of error also is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J. and Sweeney, J. concur.