[Cite as *Edge v. Fairview Hosp.*, 2011-Ohio-2148.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 95215

## EMILY EDGE

PLAINTIFF-APPELLANT

vs.

## FAIRVIEW HOSPITAL, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-670975

**BEFORE:** E. Gallagher, J., Boyle, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:**    May 5, 2011

**ATTORNEY FOR APPELLANT**

Susan E. Petersen
Petersen & Petersen
428 South Street
Chardon, Ohio    44024


**ATTORNEYS FOR APPELLEES**

Joseph E. Herbert
Douglas G. Leak
Roetzel & Andress, L.P.A
1375 East Ninth Street
Suite 900
Cleveland, Ohio    44114

EILEEN A. GALLAGHER, J.:

{¶ 1}   Emily Edge ("Edge") appeals from the decisions of the trial court during a jury trial that ultimately resulted in a defense verdict.   Edge argues that the trial court abused its discretion by excluding evidence from her treating medical specialist, when it did not allow her to argue admitted witness testimony in closing argument, and in failing to strike

prospective jurors for cause. For the following reasons, we affirm the decision of the trial court.

{¶ 2} On Sunday, September 23, 2007, emergency medical services ("EMS") transported Edge to the Fairview Hospital Emergency Room after she fell at home and landed on her buttocks. Upon her arrival at the hospital, emergency room physician Dr. James Mark examined and evaluated Edge, who complained of severe back pain. Dr. Mark ordered an x-ray of Edge's lumbar spine. Because no radiologist was on site reading films in the afternoon on a Sunday, Dr. Mark read the x-ray and noted in the emergency room chart "negative," meaning there was no finding of an acute injury. Dr. Mark diagnosed Edge with an acute back strain, discharged her, and instructed her to follow-up with her primary care physician at MetroHealth Medical Center ("MetroHealth"). On the following Monday, September 24, 2007, Dr. John Saks, a radiologist, read the film and put his interpretation in a report, listing no fracture or suspicion of fracture.

{¶ 3} On September 27, 2007, Edge attempted to schedule an appointment with her regular doctor at MetroHealth. No appointments were available, however, so Edge presented herself at MetroHealth's urgent care center where she saw Dr. David Jones. Dr. Jones did not request additional imaging and diagnosed Edge's pain as musculoskeletal and prescribed conservative management and pain medication.

{¶ 4}  On October 2, 2007, Edge called EMS after the pain in her back was so severe she could not get out of her chair.   Ultimately, Edge ended up turning EMS away and did not follow-up with her doctors until October 11, 2007.   On that date, Edge went to MetroHealth and saw Dr. Marton Lemyre for a scheduled appointment.   Edge told Dr. Lemyre about her continued pain and he ordered x-rays.   Dr. Lemyre interpreted the plain film the next morning and advised Edge, through her daughter Darlene Thurau, that the films showed a compression fracture of L-1 and that Edge needed to return to MetroHealth for further imaging.

{¶ 5}  Edge returned to MetroHealth on October 16, 2007 for a CT scan, which showed the fragments of bone from the fracture entering the spinal canal.   Two days later, Edge began complaining of numbness in her legs and her daughters, Diane Ward and Darlene Thurau, took her to MetroHealth's emergency room where she was admitted immediately. MetroHealth staff performed an MRI and referred Edge to a neurosurgeon.

{¶ 6}  During this time, Edge's daughter Darlene Thurau went to Fairview Hospital to retrieve a copy of the plain films from September 23, and Thurau then delivered the plain films to neurosurgeon Dr. Margaret Verrees at an evaluation with the doctor on October 20, 2007.   Darlene Thurau performed those acts on her own initiative, not at the request of any of the above medical professionals.   During their meeting on October 20, Dr. Verrees discussed

Edge's spinal fracture and the resulting surgery she would have to perform.    At the end of the

meeting, Edge's daughter presented Dr. Verrees with the September 23 plain films and asked

the doctor if the spinal fracture was present in the films.    Dr. Verrees reviewed the films and

documented her interpretation as follows:

> "Imaging: Reviewed, interpreted and applied to the clinical situation by me: Plain films of L-spine from OSH from 9/25/07 show L1 compression fracture with 40-50% loss of height, significant osteoporosis.
>
> "CT of T-L spine from 10/16 shows L1 with 90% loss of height with with [sic] encroachment of bone fragments on spinal canal.
>
> "MRI shows L1 90% loss of height with canal encroachment."[1]

{¶ 7}    On October 22, 2007, Dr. Verrees performed surgery on Edge.    Edge suffered

serious medical complications after the surgery and was hospitalized for months.    On

September 19, 2008, Edge filed the instant medical malpractice action against Fairview

Hospital, Dr. Saks, and the Cleveland Clinic Foundation.    On November 24, 2008, Edge

amended her complaint to add co-defendants Dr. Mark, Emergency Professional Services, Inc.,

Rajiv Philip, M.D., Dr. Jones, and MetroHealth.    Edge alleged that the defendants failed to

---

[1] Although Dr. Verrees's report lists the x-rays as being captured September 25, 2007, Edge had no x-rays taken that day.    Dr. Verrees incorrectly listed the date as September 25, 2007, instead of September 23, 2007.    The parties believe that Dr. Verrees's use of the abbreviation "OSH" was short for "outside hospital."    For purposes of clarity, this court will refer to the September 23, 2007 x-rays by that date.

timely diagnose and treat her L1 compression fracture and thus, caused her to undergo a spinal fusion and to suffer physical and mental impairments and other related damages.

{¶ 8}  Trial began on April 26, 2010.[2]  On day two of trial, Edge voluntarily dismissed co-defendants Dr. Mark, Emergency Professional Services, Inc., Dr. Jones, and MetroHealth.  Trial continued against only Dr. Saks, Fairview Hospital, and the Cleveland Clinic Foundation ("defendants-appellees").  On May 5, 2010, the jury returned a defense verdict.  Edge timely appealed to this court, raising the five assignments of error contained in the appendix to this opinion.

{¶ 9}  In her first assignment of error, Edge argues the trial court erred when it refused to admit Dr. Verrees's medical report in which she reviewed and interpreted Edge's September 23, 2007 plain films.  This assignment of error is broken up into three sub-parts, each challenging the court's decision on separate evidentiary grounds.

{¶ 10} In her brief, Edge correctly states that the pivotal issue at trial was whether the jury believed that Edge's fracture existed on the Fairview Hospital plain film taken September 23, 2007.  In addition to the testimony of Edge's radiology and neurosurgery expert, Edge attempted to get into evidence Dr. Verrees's October 20, 2007 medical report as quoted above;

---

[2]Edge dismissed defendant Rajid Philip, M.D. without prejudice prior to trial.

specifically, the key sentence, "Plain films of L-spine, from OSH from 9/25/07 show L1 compression fracture with 40-50% loss of height, significant osteoporosis." However, on April 19, 2010, the defendants-appellees filed a motion in limine to exclude any evidence, testimony or reference related to Dr. Verrees's interpretation of the September 23 plain films. Defendants argued that Dr. Verrees's interpretation of the plain films constituted inadmissible hearsay pursuant to Evid.R. 802. Edge opposed this motion, arguing that Dr. Verrees's note was admissible under the business record exception to the hearsay rule as set forth in Evid.R. 803(6), as well as the admission of a party-opponent exception under Evid.R. 801(D)(2). On April 27, 2010, the trial court granted the defendants' motion in a journal entry as follows:

> "Defendant Fairview Hospital's Motion in Limine to exclude any evidence, testimony or reference related to Dr. Verrees's interpretation of the 9-25-07 plain films is granted to the extent that proper examination of the proper witness may allow the admission of such testimony."[3]

{¶ 11} During the course of the trial, Edge repeatedly attempted to get the key sentence from Dr. Verrees's report into evidence. However, the trial court consistently took the position that it was inadmissible hearsay. As such, the record went back to the jury with the key sentence redacted.

{¶ 12} The admission of evidence lies within the broad discretion of the trial court.

---

[3] The docket improperly reflects the trial court's April 23, 2010 journal entry because of an

*Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 239, 2005-Ohio-4787, 834 N.E.2d 323. A reviewing court will uphold an evidentiary decision absent an abuse of discretion that has affected the substantial rights of the adverse party or is inconsistent with substantial justice. Id. *Deutsche Bank Natl. Trust Co. v. Gardner*, Cuyahoga App. No. 92916, 2010-Ohio-663.

{¶ 13} It is with this standard of review in mind that we now examine Edge's first sub-assignment of error: "The trial court's exclusion of Dr. Verrees's report was in violation of Ohio Rule of Evidence 803(6) and Eighth District precedent." In response, defendants-appellees argue that Dr. Verrees's notation was made at the request of Edge's daughters, rather than in the normal course of business, i.e., for the purpose of medical diagnoses or treatment. We find this assigned error to lack merit.

{¶ 14} Hearsay evidence is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay evidence is inadmissible at trial absent a recognized exception as set forth in Evid.R. 803. In the instant case, both parties admit that Dr. Verrees's statements concerning her interpretation of the September 23, 2007 plain films constitute hearsay statements. Instead, Edge argues that the business records exception of

apparent clerical error. A review of the trial court's hand-written entry is quoted above.

Evid.R. 803(6) applies.  The rule defines a business record as:

> "A memorandum, report, record or data compilation, in any form, of acts, events, or conditions made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation * * *."

{¶ 15} Ohio courts have readily acknowledged that Evid.R. 803(6) requires additional elements of authentication.  *Lambert v. Goodyear Tire & Rubber Co.* (1992), 79 Ohio App.3d 15, 606 N.E.2d 983.  The proponent of the evidence must show, or the parties must stipulate, that (1) the records were made at or near the time of the event, (2) the records were kept in the ordinary course of business, and (3) the records were made by a person with knowledge.  Id., Evid.R. 901.  Additionally, Ohio courts have also held that when a party desires to make an authenticity stipulation solely for Evid.R. 901 purposes and not for Evid.R. 803(6) purposes, the party must explicitly bring to the court's attention the limited nature of the stipulation.  *Lambert*, supra; see, also, *Smith v. Dillard's Dept. Stores, Inc.*, Cuyahoga App. No. 75787, 2000-Ohio-2689; *Ruth v. Moncrief, M.D.*, Montgomery App. No. 18479, 2001-Ohio-1709.

{¶ 16} In the present case, defendants-appellees stipulated to the authenticity of "any of the medical  records/therapy records obtained in the course of discovery."  Trial brief, page 7.  What is conspicuously absent from that stipulation is a reservation that its stipulation

related solely to the Evid.R. 901 aspect of authenticity. In accordance with Ohio law, we believe that the defendants-appellees' stipulation to the authenticity of the medical records constituted a waiver of the foundational requirements of Evid.R. 803(6). *Lambert*, supra, *Smith,* supra, *Ruth*, supra. Therefore, defendants-appellees' persuasive argument that Dr. Verrees's interpretation of the September 23, 2007 plain films constitutes inadmissible hearsay because it was not acquired during the regular course of business, cannot be considered. Additionally, as it relates to Edge's first sub-assignment of error, defendants-appellees fail to oppose the error on any other grounds.

{¶ 17} Nonetheless, even if we were to determine that the trial court erred in not admitting Dr. Verrees's key sentence, *on this specific argument made by Edge*, we cannot say that the trial court abused its discretion. As stated above, a trial court abuses its discretion in admitting or excluding evidence only if that decision affects the substantial rights of the party. *Deutsche,* supra. We cannot say that the trier of fact would have made a different decision. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 407 N.E.2d 490.

{¶ 18} In the present case, Edge cannot demonstrate that the jury's verdict would have been any different had the trial court allowed her to present any evidence of Dr. Verrees's interpretation of the September 23, 2007 plain films. Notwithstanding Edge's own radiology and neurosurgery expert, Dr. Mitchell Supler, who testified that the compression fracture

existed in the September 23, 2007 plain films, Edge also presented Dr. Verrees's interpretation of the plain films to the jury in one form or another through the testimony of several witnesses as follows:

> 1. Edge's daughter, Ward, testified that she learned from Dr. Verrees that after Dr. Verrees looked at the September 23, 2007 plain films, she saw a compression fracture on those films.
>
> 2. Edge testified that Dr. Verrees looked at the plain films of September 23, 2007 and informed her that there was a fracture on the films and that Dr. Verrees did not understand how it was missed.
>
> 3. During the cross-examination of defendants-appellants' expert, Dr. Patrick William McCormick ("Dr. McCormick"), Edge's counsel inquired about Dr. Verrees's interpretation of the September 23, 2007 films and confirmed that Dr. McCormick disagreed with Dr. Verrees's interpretation; and
>
> 4. Edge's examination of defendant-appellees' expert, Dr. Steven Deutch ("Dr. Deutch"), during which Edge's counsel read Dr. Verrees's key sentence into evidence: "Image reviewed and interpreted and applied to the clinical situation by [Dr. Verrees]. Plain films of L spine from OSH from 9/25/07 show L1 compression fracture." Dr. Deutch discussed Dr. Verrees's interpretation and stated that he disagreed.

{¶ 19} Additionally, and as stated above, Edge's own expert, Dr. Supler, testified that the compression fracture existed on September 23, 2007 and that Dr. Saks breached the standard of care in failing to diagnose it as such. Accordingly, the evidence contested by Edge was presented to the jury during trial. Therefore, we cannot say that any error made as to this specific portion of Edge's appeal affected Edge's substantial rights.

{¶ 20} In her second sub-assignment of error, Edge argues "[t]he trial court's exclusion of Dr. Verrees['s] report was in violation of Ohio Rule of Evidence 703 and Ohio law." Specifically, Edge claims that a line of questioning elicited from her expert Dr. Supler, in which he comments on Dr. Verrees's interpretation of the September 23, 2007 plain films, should have been admitted as part of the basis for his conclusions as permitted by Evid.R. 703. This argument is unpersuasive.

{¶ 21} Evid.R. 703 provides as follows: "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted into evidence." See, also, *State v. Jones* (1984), 9 Ohio St.3d 123, 459 N.E.2d 526.

{¶ 22} In the present case, the trial court granted the defendants-appellees' motion in limine and accordingly, any evidence pertaining to Dr. Verrees's interpretation of the September 23, 2007 plain films was ruled inadmissible. Therefore, the trial court acted correctly and within the bounds of Evid.R. 703 when it struck a line of testimony from Edge's expert, Dr. Supler, in which he discussed Dr. Verrees's interpretation as support for his conclusion. The trial court properly determined that Dr. Supler could not use as a basis for his conclusion, nor could he testify to, Dr. Verrees's note, which the trial court held to be inadmissible hearsay.

{¶ 23} Moreover, although Dr. Supler was not permitted to comment about Dr.

Verrees's interpretation of the September 23, 2007 plain films, he did testify about his own interpretation of the same plain films:

"Q: Is the L1 vertebra on the film of 9-23-07 fractured?

"* * *

"A: The x-ray shows an abnormality of L1 which is consistent with a fracture, yes."

{¶ 24} Consequently, Dr. Supler supported his expert conclusion on proximate cause by referring to his own interpretation that the compression fracture existed on the September 23, 2007 plain films. Thus, not only did the trial court act correctly in prohibiting Dr. Supler from testifying about matters outside of the record, this ruling could not have substantially affected Edge's rights. Accordingly, this portion of Edge's appeal is overruled.

{¶ 25} In her third sub-assignment of error and her third assignment of error, Edge argues the trial court's exclusion of Dr. Verrees's report violated Evid.R. 801(D)(2). In particular, Edge claims that Dr. Verrees's statement was an admission by a party-opponent and therefore, the statement, and testimonial references to the statement, should have been admitted pursuant to Evid.R. 801(D)(2). We disagree with Edge's arguments; in the interest of judicial economy, this court will address these arguments contemporaneously.

{¶ 26} Evid.R. 801(D)(2) provides as follows:

"A statement is not hearsay if:

"* * *

"(2) Admission by party-opponent. The statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity, or (b) a statement of which the party has manifested an adoption or belief in its truth, or (c) a statement by a person authorized by the party to make a statement concerning the subject, or (d) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy."

{¶ 27} In both portions of her brief addressing this error, Edge fails to identify which clause of Evid.R. 801(D)(2) she finds applicable to Dr. Verrees's statements. Even without properly identifying the applicable portion of the rule, we find that none of them apply. Edge's intention of offering Dr. Verrees's interpretation of the September 23, 2007 plain films, which is clear from the record, was to establish that her compression fracture existed in those plain films and that defendants-appellees breached their standard of care in failing to correctly interpret the same films interpreted by Dr. Verrees. That specific argument can only factually be applied to the defendants-appellees, none of whom had any party affiliation with Dr. Verrees. More specifically, Dr. Verrees's statements were not offered against the party who had made them — Dr. Verrees or her employer, MetroHealth.

{¶ 28} Additionally, Edge's claim that Dr. Verrees's interpretation of the September 23, 2007 plain films was somehow an admission by MetroHealth that its employees or agents

were negligent when Edge presented to the emergency room on September 27, 2007, lacks credibility. Edge's allegations against MetroHealth, before they were dismissed, related to Edge's clinical presentation to MetroHealth's emergency room on September 27, 2007 and whether further testing and/or work-up was warranted. Edge's claims against MetroHealth had nothing to do with Dr. Verrees's interpretation of the September 23, 2007 plain films and thus, could not logically be used as a party admission for what occurred on September 27, 2007 at MetroHealth.

{¶ 29} Moreover, on day two of her trial, Edge voluntarily dismissed all defendants but for Dr. Saks, the Cleveland Clinic Foundation, and Fairview Hospital. Accordingly, Dr. Verrees's statements, even if arguably considered an admission by a party-opponent, would not be admissible against the remaining defendants-appellees from that point on. The Ohio Supreme Court addressed this issue and ruled as follows:

> "When a mistrial has been declared with respect to one of two co-defendants in a civil case, but not as to the second co-defendant, so that the jury is charged with determining only the liability of the second co-defendant, out-of-court statements made by the first co-defendant may not be admitted in evidence as an exception to the hearsay rule, pursuant to Evid.R. 801(D)(2)."

> *Mastran v. Urichich* (1988), 37 Ohio St.3d 44, 523 N.E.2d 509, syllabus.

{¶ 30} Based on the foregoing, the trial court correctly prohibited Edge from using Dr. Verrees's statements as out-of-court statements. Edge's first and third assignments of error

are overruled.

{¶ 31} In her second assignment of error, Edge argues the trial court erred when it failed to allow her to re-argue testimonial evidence during her closing argument. This assignment of error lacks merit.

{¶ 32} It is widely accepted that great latitude is afforded counsel in closing argument to the jury. *State v. Champion* (1924), 109 Ohio St. 281, 142 N.E. 141. See, also, *State v. Woodards* (1966), 6 Ohio St.2d 14, 215 N.E.2d 568. Included within the bounds of permissible argument are references to the uncontradicted nature of the evidence presented by the advocate. *State v. Ferguson* (1983), 5 Ohio St.3d 160, 450 N.E.2d 265, *Champion*, supra. However, the assessment of whether these bounds have been exceeded is a discretionary function to be performed by the trial court. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313. Such determination will not be reversed on appeal absent an abuse of discretion. *Pang*, supra.

{¶ 33} As referred to above, during the videotape deposition of Dr. Deutch, defendants-appellees' radiology expert, Edge read into evidence Dr. Verrees's key sentence and the parties discussed its implications. Specifically, on cross-examination, Dr. Deutch admitted that the measurements taken of Edge's September 23, 2007 plain films, when applied to a mathematical formula, were close to what is considered to be a fracture. Edge attempted

to re-argue this testimony during her closing argument but was prohibited by the trial court. Edge claims the trial court's prohibition constituted an error. We disagree.

{¶ 34} Prior to trial, the court ruled on defendants-appellees' motion in limine thereby excluding "any evidence, testimony or reference" related to Dr. Verrees's interpretation of the September 23, 2007 plain films. However, despite the ruling, Dr. Deutch's trial video testimony on this subject was mistakenly played to the jury. On this issue, the trial court was well within the bounds of its gatekeeping function when it prohibited Edge from arguing Dr. Deutch's testimony to the jury during closing arguments. Moreover, Edge knew that Dr. Verrees's key sentence was a prohibited line of questioning as is evident from her direct examination of several of her witnesses. Thus, Edge's second assignment of error is overruled.

{¶ 35} In her fourth assignment of error, Edge argues the trial court erred when it failed to strike two prospective jurors for cause pursuant to R.C. 2313.42 and 2313.43. We find this argument unpersuasive.

{¶ 36} In *Hall v. Banc One Mgt. Corp.,* 114 Ohio St.3d 484, 2007-Ohio-4640, 873 N.E.2d 290, the Ohio Supreme Court distinguished the standard of review for "principal challenges" pursuant to R.C. 2313.42(A)-(I) and "favor challenges," pursuant to R.C. 2313.42(J). The principal challenges to prospective jurors incorporated in R.C.

2313.42(A)-(I) establish a conclusive presumption of disqualification if found valid and precludes the exercise of judicial discretion to seat that prospective juror. Id. R.C. 2313.42(J), however, requires the trial court to make a subjective determination about the prospective juror's fairness and impartiality and accordingly, requires the exercise of judicial discretion. Id.; see, also, *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301.

{¶ 37} In the present case, Edge argues that Edward DeWindt should have been dismissed on the basis that he could not be fair and impartial pursuant to R.C. 2313.42(J), a favor challenge. Whereas, Edge claims that Brian Carruthers should have been dismissed as a juror pursuant to R.C. 2313.42(E), a principal challenge. Since Edge's assigned errors require different standards of review, they will be addressed separately.

<u>Challenge of Prospective Juror Mr. DeWindt</u>

{¶ 38} R.C. 2313.42(J) provides that the following constitutes good cause for challenging a prospective juror: "That he discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court." A prospective juror who has been challenged pursuant to R.C. 2313.42(J) should be excused only if the trial court has any doubt as to the juror being entirely unbiased. *Hinkle v. Cleveland Clinic*, 159 Ohio App.3d 351, 2004-Ohio-6853, 823 N.E.2d 945. Because the trial court has the opportunity to observe the demeanor of the juror and evaluate the sincerity of the answers to questions, the

trial court's decision to not dismiss a juror is given considerable significance in the appellate review of its decision. Id.; *Berk*, supra.

**{¶ 39}** In this case, although Mr. DeWindt was personally acquainted with counsel for MetroHealth, he stated that this would not be a factor in his ability to be a fair and impartial juror. He referenced his answers to the jury questionnaire in which he responded that he could be impartial and make a judgment on the evidence. Lastly, he stated that he took his duty seriously and that both as a rule of law and civic responsibility he believed he could be fair and impartial. The trial court concluded that Mr. DeWindt could remain impartial and denied Edge's challenge for cause. After reviewing the voir dire transcript, we cannot say that the trial court abused its discretion in denying Edge's challenge for cause. Moreover, Edge exercised a peremptory challenge and removed him from the jury.

<u>Challenge of Prospective Juror Mr. Carruthers</u>

**{¶ 40}** R.C. 2313.42(E) constitutes a principal challenge to a prospective juror and requires the dismissal of a juror if it is established: "That he is the employer, the employee or the spouse, parent, son or daughter of the employer or employee, counselor, agent, steward, or attorney of either party."

**{¶ 41}** In the instant case, Edge claims that since Mr. Carruthers's wife, a physician employed by University Hospitals who enjoyed privileges at Fairview Hospital, those

privileges equated her to being an agent of Fairview Hospital, and, therefore, made R.C. 2313.42(E) applicable. The Sixth District Appellate Court rejected this argument in *Tisdale v. Toledo Surgical Specialists, Inc.*, Lucas App. No. L-07-1300, 2008-Ohio-6539.

{¶ 42} In *Tisdale*, a prospective juror was a nurse anesthetist that worked at the defendant hospital for 30 years, but was not an employee of the hospital. The plaintiff in *Tisdale* argued that the juror's working at the defendant hospital was tantamount to being an employee or agent of the hospital, and therefore, she should have been excused pursuant to R.C. 2313.42(E). The *Tisdale* court rejected plaintiff's position and held that although the juror worked at the hospital for 30 years, "she was not an employee, agent or steward of the hospital." Id.

{¶ 43} Similarly, the fact that Mr. Carruthers's wife had privileges at Fairview Hospital did not equate her to being either an employee or an agent for purposes of R.C. 2313.42(E). Edge offered no proof during the voir dire questioning of Mr. Carruthers that his wife was either an employee or an agent of Fairview Hospital. Accordingly, the trial court did not err in refusing to excuse Mr. Carruthers for cause.

{¶ 44} Edge's fourth assignment of error is overruled.

{¶ 45} In her fifth and final assignment of error, Edge argues that the cumulative effect of the trial court's errors was prejudicial and denied her a fair trial. We find this assignment

of error to lack merit.

{¶ 46} In *State v. DeMarco* (1987), 31 Ohio St.3d 191, 509 N.E.2d 1256, the Ohio Supreme Court recognized the doctrine of cumulative error. Pursuant to this doctrine, a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal. *State v. Garner* (1995), 74 Ohio St.3d 49, 656 N.E.2d 623. This Court found the extension of the cumulative error doctrine to civil cases is warranted where the court is confronted with several errors, which either are harmless individually or have marginally prejudicial effects, but combine to require a new trial. *Dawson v. Cleveland Metro. Gen. Hosp.* (Nov. 20, 1986), Cuyahoga App. Nos. 51052 and 51779.

{¶ 47} This doctrine is not applicable to the present case as we do not find multiple instances of harmless error. *State v. Webb*, 70 Ohio St.3d 325, 1994-Ohio-425, 638 N.E.2d 1023; *Garner*, supra; *Dawson,* supra. Accordingly, Edge's fifth and final assignment of error is overruled.

{¶ 48} Based on the foregoing, the judgment of the trial court is affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
LARRY A. JONES, J., CONCUR

APPENDIX

Assignments of Error:

"I.   The trial court erred to the substantial prejudice of Plaintiff-Appellant in refusing to admit a critical portion of Plaintiff-Appellant's medical record of her treating neurosurgeon regarding her review and interpretation of the x-ray at issue.

"II.   The trial court erred to the substantial prejudice of Plaintiff-Appellant in prohibiting her from presenting argument as to admitted evidence during closing argument.

"III.   The trial court erred to the substantial prejudice of Plaintiff-Appellant in refusing to allow her to present evidence of the statements made by a party employee physician Dr. Margaret Verrees pursuant to Ohio Rule of Evidence 801(D)(2).

"IV.   The trial court abused its discretion and erred as a matter of law by failing to

strike prospective jurors for cause pursuant to R.C. 2313.42 and 2313.43.

"V. The cumulative effect of the trial court's errors was prejudicial and denied Plaintiff-Appellant a fair trial."