[Cite as *Ohio Valley Business Advisors, L.L.C. v. AER Invest. Corp.*, 2017-Ohio-1283.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   104771

# OHIO VALLEY BUSINESS ADVISORS, L.L.C.

PLAINTIFF-APPELLEE

vs.

# AER INVESTMENT CORPORATION

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-834130

**BEFORE:**  Boyle, P.J., Laster Mays, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:**  April 6, 2017

**ATTORNEY FOR APPELLANT**

Dorothea J. Kingsbury
30195 Chagrin Boulevard, #110
Cleveland, Ohio   44124


**ATTORNEY FOR APPELLEE**

Jack S. Malkin
20521 Chagrin Boulevard, Suite E
Shaker Heights, Ohio   44122

MARY J. BOYLE, P.J.:

{¶1} Defendant-appellant, AER Investment Corp. ("AER"), appeals from a judgment in favor of plaintiff-appellee, Ohio Valley Business Advisors, L.L.C. ("Ohio Valley"), in the amount of $28,976.16. AER raises two assignments of error for our review:

1. The trial court erred in finding that a valid contract for the contingent purchase of appellant's business existed with K9 Playtime, L.L.C.

2. The trial court erred in reaching a conclusion that was contrary to the manifest weight of the evidence.

{¶2} Finding no merit to AER's arguments, we affirm.

## I. Procedural History and Factual Background

{¶3} The undisputed facts from the relevant contracts and trial are as follows. Since 2009, AER owned a franchise business in Highland Heights, Ohio, known as Camp Bow Wow. On April 4, 2014, AER sold the assets of Camp Bow Wow back to the franchisor, DOG Development, L.L.C. ("DOG"), for $175,000, pursuant to an asset purchase agreement. The terms of the asset purchase agreement between AER and DOG, however, included a contingent purchase price if DOG was able to resell the business for more than $175,000 before August 31, 2014. AER was also given an opportunity to submit resale proposals from third parties during that same time period. Thus, if Camp Bow Wow was resold during this time frame for more than $175,000, either through DOG's efforts or through AER's efforts, then AER was entitled to 100 percent of the additional purchase price minus certain expenses that were spelled out in

the asset purchase agreement. On April 7, 2014, AER, through its president, Amy Ryan, entered into a nonexclusive business listing agreement ("brokerage agreement") with Ohio Valley, a broker, where AER engaged Ohio Valley to "find a buyer" for Camp Bow Wow on or before August 31, 2014.

{¶4} Per the brokerage agreement, AER agreed to pay Ohio Valley a nonrefundable listing fee of $5,000 in advance, and then a 12 percent brokerage fee in the event of a successful sale, up to $40,000 (minus the $5,000 listing fee). The brokerage agreement further provided that potential buyers excluded from the brokerage agreement were "only those potential buyers who originated" through the franchisor, DOG.

{¶5} The brokerage agreement between AER and Ohio Valley also incorporated the terms of the asset purchase agreement between AER and DOG. The brokerage agreement stated:

> WHEREAS, AER and DOG have executed agreements to sell [Camp Bow Wow] to DOG effective April 1, 2014, but the terms of such sale include a contingent purchase price if DOG resells [Camp Bow Wow] at a price higher than $175,000 prior to August 31, 2014, and AER is given the right to submit resale proposals from third parties during such period[.]
>
> * * *
>
> The Broker understands that AER is the former owner of [Camp Bow Wow] and has sold the business to DOG under a contract that allows AER to find a buyer before 8/31/2014 that will pay a higher price than the $175,000 that DOG has agreed to pay for the business. DOG has agreed to not unreasonably refuse any proposal, but DOG can sell without AER's consent for more than $300,000, or decline to sell to any purchaser they are not willing to have as a DOG franchisee, and AER has no liability to Broker beyond the listing fee in such circumstances.

{¶6} On May 7, 2014, DOG forwarded Ryan a letter of intent to purchase Camp

Bow Wow. The potential buyer, an anonymous limited liability corporation (the name of the corporation was blacked out, followed by "L.L.C."), proposed to purchase Camp Bow Wow for $250,000. Although Ryan suspected that Michael Paquette, who owned a Camp Bow Wow franchise in Cuyahoga Falls, was the anonymous potential buyer, it is undisputed that neither AER nor Ohio Valley knew who the potential buyer was at that time. Ryan rejected the proposed offer because it was too low; she initially listed Camp Bow Wow at a price of over $500,000. Plus, she felt that she still had time to find a buyer who would pay more for her business before the August 31 deadline.

{¶7} On August 18, 2014, Lee Huff, managing member of Ohio Valley, presented Ryan with a nonbinding letter of intent to purchase Camp Bow Wow for $300,010. Three "buyers" signed the letter of intent: Jennifer D'Aurelio, Missy Bedwell, and Michael J. Paquette.

{¶8} On August 25, 2014, Huff presented Ryan with a legally binding offer to purchase that it prepared where K9 Playtime, L.L.C. ("K9") formally offered to purchase Camp Bow Wow from AER for $300,010. The offer to purchase lists the purchaser's corporation as K9 and the seller's corporation as DOG. Under K9's corporate name, it states "Purchaser: M. Paquette, J. D'Aurelio, and M. Bedwell." Under DOG's corporation name, it states: "Seller: Heidi Ganahi."

{¶9} Before K9 and DOG executed the offer to purchase, AER "halted the consummation of the purchase," alleging that Ohio Valley was not entitled to its brokerage fee of $28,976.16 because the proposed buyer originated through DOG. AER

asserted that one of the buyers, Michael Paquette, already owned a Camp Bow Wow elsewhere in Ohio, and was therefore a purchaser generated by DOG's efforts and not Ohio Valley's efforts.

{¶10} Stanley Dub, Ryan's former attorney, testified that after Ryan received the August 18, 2014 letter of intent, he and Ryan believed that it was sent by the same person who sent the May 7 letter of intent. Ryan and Dub testified that the letters were nearly identical except for the dates. So Dub called DOG and asked someone at DOG to confirm who sent the letter of intent in May (since they knew that letter had originated through DOG). DOG informed Dub that it was Bark-N-Play, L.L.C., whose majority member was Michael Paquette. Because of this, Dub stopped the sale going through Ohio Valley. Instead, Dub instructed the members of K9 to make the offer directly through DOG rather than Ohio Valley.

{¶11} On September 4, 2014, Dub sent an email to the president of Ohio Valley, informing him that AER would not pay Ohio Valley the brokerage fee under the brokerage agreement.

{¶12} The sale of AER's former Camp Bow Wow from DOG to K9 closed on December 17, 2014, netting AER $283,134.68. AER did not pay Ohio Valley a brokerage fee pursuant to the brokerage agreement, asserting that there was not a valid contract for sale on August 31, 2014, under the terms of the brokerage agreement because the sale was originated through DOG.

{¶13} In October 2014, Ohio Valley filed a complaint for breach of contract and

several other related claims against AER. The case was ultimately tried to the bench.

{¶14} The trial court found in favor of Ohio Valley. Specifically, the trial court found that a valid agreement existed between AER and Ohio Valley, that K9 was not an excluded purchaser under the brokerage agreement, and that AER owed Ohio Valley the $28,976.16 brokerage fee. The trial court also dismissed Ohio Valley's claims for unjust enrichment and for attorney fees. It is from this judgment that AER appeals.

## II.  Contractual Capacity

{¶15} In its first assignment of error, AER argues that because K9 was not a registered corporation in the state of Ohio until after the offer to purchase was executed, it lacked the legal capacity to enter into a contract, and therefore, the offer to purchase was not a valid contract. The offer to purchase was dated August 25, 2014. K9 filed its articles of incorporation with the Ohio Secretary of State on September 3, 2014. AER contends that because the offer to purchase was not a valid contract, Ohio Valley did not meet the deadline to find a purchaser for Camp Bow Wow by August 31, 2014, and was not entitled to the brokerage fee.

{¶16} At the trial in this case, however, AER did not raise this issue — not in its trial brief, its opening statement, cross-examination, or in its closing argument. At trial, AER did not dispute that the offer to purchase was indeed a valid contract. Rather, AER claimed that the offer to purchase did not satisfy the requirements of the brokerage agreement because the offer to purchase originated through the franchisor, DOG, and

therefore, was excluded under the brokerage agreement.[1]

{¶17} AER's claim at trial that the offer to purchase originated through DOG was based on the fact that one of three members of K9, Michael Paquette, also sent the letter of intent to purchase Camp Bow Wow to Ryan on May 7, 2014. AER contended that because it was undisputed that the first offer originated through DOG (DOG forwarded the May 7 letter of intent to Ryan) and the same person made the second offer, then the second offer also originated through DOG and was excluded under the brokerage agreement.

{¶18} It is axiomatic that errors not raised in the trial court may not be raised for the first time on appeal. *State v. Thiel*, 3d Dist. Wyandot No. 16-16-01, 2017-Ohio-242, ¶ 162, citing *State v. Williams*, 51 Ohio St.2d 112, 364 N.E.2d 1364 (1977) (arguments that are not raised in the trial court are waived for purposes of appeal). Accordingly, AER has waived all but plain error on this argument for purposes of appeal.

{¶19} AER does not acknowledge its failure to raise this argument in the trial

---

[1]At oral argument in this case, AER asserted that it raised this argument below, and cited two places in the transcript where it claimed that it did. We disagree. In both places of the transcript, on direct examination of Stanley Dub and cross-examination of Lee Huff, AER's attorney briefly mentioned during his questioning that the entity, K9, was not formed until after the offer to purchase was submitted. On both occasions, however, the context of the questioning was to establish that Michael Paquette was the actual buyer (not K9) and, therefore, the contract between AER and Ohio Valley was not valid because Michael Paquette originated through DOG and was excluded as a potential buyer under the brokerage agreement. AER's questioning was not what AER is arguing here, i.e., that the contract between DOG and K9 was not valid because K9 was not a registered corporation in the state of Ohio before the deadline of August 31, 2014. And although AER may have mentioned the fact that K9 was not formed until September 3, 2014, those two times, it did not use that fact as any part of its argument to the court before, during, or after trial.

court, nor does it invoke the plain-error doctrine on appeal. Under these circumstances, we need not address it. *See State v. Gavin*, 4th Dist. Scioto No. 13CA3592, 2015-Ohio-2996, ¶ 25, citing *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900 (an appellate court need not consider plain error where appellant fails to timely raise plain-error claim); *State v. Sims*, 10th Dist. Franklin No. 14AP-1025, 2016-Ohio-4763, ¶ 11 (appellant cannot meet burden of demonstrating error on appeal when she only preserved plain error and did not argue plain error on appeal); *In re A.R.*, 12th Dist. Butler No. CA2015-08-143, 2016-Ohio-4919, ¶ 33 (appellant is precluded from raising plain error on appeal where he does not argue it in his brief); *Coleman v. Coleman*, 9th Dist. Summit No. 27592, 2015-Ohio-2500, ¶ 9 (when a claim is forfeited on appeal and the appellant does not raise plain error, the appellate court will not create an argument on his behalf).

{¶20} Further,

[i]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.

*Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus. This is not such the case here.

{¶21} Accordingly, AER's first assignment of error is overruled.

## III.   Manifest Weight of the Evidence

{¶22} In its second assignment of error, AER argues that the trial court's judgment

was against the manifest weight of the evidence. In this assignment of error, AER makes the same argument that it did in its first assignment of error.

{¶23} AER maintains that "[w]hether or not a corporate entity exists for purposes of asserting legal rights is critical. As indicated, supra, individual members of an LLC seek the safe harbor of the protection from personal liability such a structure affords." AER's argument is indeed interesting because in its trial brief that it filed before trial, it stated, "the personal liability of a member of a limited liability company has no bearing on this decision. Whether or not he would be personally responsible for anything is very different than whether he is [an] 'involved party' to a transaction." Thus, not only did AER fail to raise this argument at trial, it argued the opposite.

{¶24} Accordingly, as we previously stated, we need not address AER's argument because AER failed to raise it in the trial court. AER's second assignment of error is overruled.

{¶25} Ohio Valley argues that it is entitled to attorney fees. The brokerage agreement, however, specifically stated that in the event of a dispute between AER and Ohio Valley, both parties would pay their own attorney fees. Moreover, the trial court ordered that each party pay its own attorney fees. Ohio Valley did not file a cross-appeal in this case as required by App.R. 3(C). This appellate rule requires that a party "who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order, shall file a notice of cross appeal within the time allowed by App.R. 4." App.R. 3(C)(1). Ohio Valley is clearly seeking to change

the trial court's order.   Thus, we decline to address this argument.

{¶26} Further, Ohio Valley requests this court to award it sanctions under App.R. 23.   App.R. 23 provides that "[i]f a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs."   Ohio Valley, however, did not move for sanctions under App.R. 23.   Although courts have an inherent power to sanction litigants and counsel, as Ohio Valley asserts, we decline to do so here.   *See Siemientkowski v. State Auto Mut. Ins. Co.*, 8th Dist. Cuyahoga No. 87229, 2006-Ohio-4122, ¶ 10, citing *Link v. Wabash RR. Co.*, 370 U.S. 626, 632, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

{¶27} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR