[Cite as *Hotz v. Cleveland*, 2020-Ohio-1383.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOHN A. HOTZ,                                  :

    Plaintiff-Appellant,          :

                                      No. 108490

    v.                                          :

CITY OF CLEVELAND, ET AL.,            :

    Defendants-Appellees.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 9, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-892886

---

### *Appearances:*

Nager, Romaine & Schneiberg Co., L.P.A., Jennifer L. Lawther, Daniel A. Kirschner, and Corey J. Kuzma, *for appellant.*

Dave Yost, Ohio Attorney General, and, Steven K. Aronoff, Assistant Attorney General, *for appellee* Bureau of Workers' Compensation.

Barbara A. Langhenry, Cleveland Director of Law, and Lisa A. Mack and Wesley M. Kretch, Assistant Directors of Law, *for appellee,* City of Cleveland.

RAYMOND C. HEADEN, J.:

{¶ 1} Plaintiff-appellant John A. Hotz ("Hotz") appeals from a jury verdict in favor of appellees city of Cleveland (the "City") and Bureau of Workers' Compensation ("Workers' Comp"). For the reasons that follow, we affirm.

## I. Factual and Procedural History

{¶ 2} In February 2013, Hotz, a police officer employed by the City, suffered an injury while handcuffing a suspect. Hotz filed an initial Workers' Comp application that was allowed for a left shoulder sprain.

{¶ 3} Hotz was diagnosed on March 26, 2013, at Parma Community General Hospital with left-leg deep-vein thrombosis ("DVT"). Hotz's DVT was treated by Dr. Priya Pujara ("Pujara") in April 2013. Pujara's records indicate that the DVT "occurred in [a] setting of acute injury" but do not specifically relate the condition to Hotz's work injury of February 2013. (Trial Exhibit O.) Anthony Wyrwas, D.C. ("Wyrwas"), treated Hotz on April 29, 2013, and released Hotz to return to work based upon his shoulder injury. Wyrwas also stated the February 2013 work incident was "the most probable cause of [Hotz's] DVT." (Trial Exhibit P.) Hotz was subsequently treated by Dr. Lawrence Payne ("Payne") on July 17, 2013. Payne's records do not indicate that Hotz's DVT was causally related to the February 2013 work incident. (Trial Exhibit R.)

{¶ 4} The Ohio Industrial Commission (the "OIC") approved Hotz's motion for additional allowances filed on August 16, 2014, to include the conditions of left-

supraspinatus tear, left-infraspinatus tendonitis, left-shoulder impingement, cervical sprain, thoracic sprain, left-knee sprain, and left-infraspinatus tendon tear.

{¶ 5} On June 16, 2015, Hotz filed a motion for an additional allowance of left-leg DVT. Dr. James R. Donovan ("Donovan") was retained on July 15, 2015, by Workers' Comp to review Hotz's medical records and opine whether his DVT was related to the February 2013 incident. Donovan concluded the DVT was not causally related to Hotz's work incident. Donovan's report was neither introduced at trial nor presented to the jury.

{¶ 6} The City hired Steven Brose, D.O. ("Brose"), on November 7, 2014, to examine Hotz regarding his DVT. Dr. Brose opined that Hotz's work incident did not cause his left-leg DVT.

{¶ 7} The OIC denied the additional allowance for DVT at two administrative levels — the district hearing office and staff hearing office — because Hotz did not establish that his DVT was causally related to his work injury. Hotz appealed to the common pleas court.

{¶ 8} The case was tried to a jury on March 27, 2019. The sole issue was whether Hotz was entitled to Workers' Comp benefits for his left-leg DVT. Expert medical testimony from Hotz's witness, Dr. Nouraldin ("Nouraldin"), and the City's witness, Brose, was presented through videotaped trial testimony. Nouraldin testified that Hotz's February 2013 work-related injury caused his left-leg DVT; Brose denied the work-related injury resulted in Hotz's DVT. On direct

examination, Brose answered questions based upon the nontestifying doctors' opinions.

{¶ 9} Counsel from both sides objected throughout the videotaped trial testimony of Drs. Nouraldin and Brose and objection logs were provided to the trial judge listing the stated objections. Prior to empaneling the jury, the trial judge overruled all such objections. The videotaped trial testimony was played to the jury.

{¶ 10} At the close of trial, Hotz and the City stipulated to the medical records that were submitted as trial exhibits. Donovan's report was not included as a trial exhibit. The medical records of Pujara, Wyrwas, and Payne were submitted as trial exhibits. The jury found Hotz was not entitled to Workers' Comp benefits for his left-leg DVT.

{¶ 11} On April 25, 2019, Hotz filed a timely notice of appeal, presenting verbatim the following assignments of error for our review:

> First Assignment of Error: The Trial Court erred in allowing Dr. Brose to testify about the causation opinions of other nontestifying doctors. (See Dr. Brose Tr. At 51 to 63)

> Second Assignment of Error: The trial court abused its discretion when it severely limited Appellant's voir dire. (See Tr. At 58.)

## II. Law and Analysis

### A. Evid.R. 803(6)

#### 1. Standard of Review

{¶ 12} Our standard of review on the admissibility of evidence is abuse of discretion. *Szulinski v. Kellison & Co.*, 8th Dist. Cuyahoga Nos. 99672 and 99674, 2014-Ohio-111, ¶ 11. An abuse of discretion is more than simply an error of law or

judgment, but implies an unreasonable, arbitrary, or unconscionable attitude by the court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A trial court's decision to admit or exclude evidence will stand unless the court abused its discretion and that decision affects the substantial rights of the party. *Edge v. Fairview Hosp.*, 8th Dist. Cuyahoga No. 95215, 2011-Ohio-2148, ¶ 17.

### 2. Testimony regarding Drs. Pujara, Wyrwas, and Payne

{¶ 13} Hotz argues Brose should not have been permitted to testify about the opinion testimony of Pujara, Wyrwas, and Payne because (1) the opinion testimony was hearsay, and (2) Brose's testimony did not qualify under the business records exception to hearsay contained in Evid.R. 803(6). The City and Workers' Comp counter that the doctors' opinions regarding causation were contained within authenticated medical records kept in the regular course of treatment; the testimony was subject to the Evid.R. 803(6) exception to hearsay; and the testimony did not prejudice Hotz.

{¶ 14} Evid.R. 803(6) — Exceptions to the rule against hearsay — Regardless of whether the declarant is available as a witness — reads as follows:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> * * *
>
> **(6) Records of regularly conducted activity**.
>
> A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum,

report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901 (B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

{¶ 15} This court has interpreted Evid.R. 803(6) and found opinion and diagnosis testimony of nontestifying doctors is subject to the hearsay exception if the opinion or diagnosis is contained in medical records or reports that meet the necessary foundational and authentication requirements and do not violate other evidentiary rules. *Smith v. Dillard's Dept. Stores*, 8th Dist. Cuyahoga No. 75787, 2000-Ohio-2689, ¶ 9-11, 27;[1] *accord Sanders v. Stover*, 8th Dist. Cuyahoga No. 89241, 2007-Ohio-6202, ¶ 24.

{¶ 16} During his videotaped trial testimony, the City's expert medical witness, Brose, was questioned about Wyrwas, Pujara, and Payne's opinions on the causal relationship between Hotz's DVT and his February 2013 work-related incident. Wyrwas, Pujara, and Payne provided medical treatment to Hotz following his work-related incident, but did not testify at trial. They are classified as nontestifying physicians.

{¶ 17} Upon direct examination, Brose characterized Wyrwas's statement in his February 21, 2013 letter that he "suspect[s] that [Hotz] tore a muscle or partially

---

[1] While Hotz "requests this district to limit the *Smith* holding regarding opinions and diagnoses in hospital records to opinions and diagnose[s] that do not include causation opinions at the heart of a workers' compensation [t]rial," there is no basis to apply such a limitation in this matter and we are bound by and will follow our precedent — *Smith*.

tore a muscle/tendon in his lower leg and that may be the etiology of his DVT and pulmonary embolism" as speculation rather than a diagnosis. (Brose tr. 49; trial Exhibit J.) [2] Brose also referenced Wyrwas's April 29, 2013 letter and read the following excerpt:

> Otherwise, we need to modify this claim to further demonstrate that he did suffer acute left lower leg hamstring partial tear injury from wrestling the suspect while making the arrest.
>
> He did have significant ecchymosis present in his left leg and hamstring region. This is the most probable cause of his DVT and pulmonary embolism.

(Brose tr. 54; trial Exhibit P.) Brose testified Wyrwas's conclusion in the April 29, 2013 letter was unsupported by any objective evidence, and therefore, was simply conjecture. (Brose tr. 54.)

{¶ 18} Brose reviewed Pujara's notes from Hotz's visit on April 24, 2013, and commented that Pujara made no mention of a traumatic injury to Hotz's leg and did not determine whether the DVT occurred as a result of the February 2013 work-related incident. (Brose tr. 51-53; trial Exhibit O.) In regard to Pujara's notes from a follow-up visit on August 12, 2013, Brose stated Pujara examined Hotz's lower extremities, but did not express an opinion as to the cause of Hotz's DVT. (Brose tr. 54-56; trial Exhibit Q.)

{¶ 19} Payne examined Hotz on July 17, 2013, and the medical records from that date were introduced as trial Exhibit R. According to Brose's testimony, Payne

---

[2] Brose's videotaped trial testimony is referenced throughout this opinion as "Brose tr. ____."

examined Hotz's lower extremities, but did not offer an opinion as to the cause of his DVT. (Brose tr. 55-56; trial Exhibit R.)

{¶ 20} At trial, the parties stipulated to the authenticity of Wyrwas, Pujara, and Payne's medical records — trial Exhibits J, O, P, Q, and R — that were referenced by Brose.[3] In accordance with Ohio law, the parties' stipulation to the authenticity of the medical records constitutes a waiver of Evid.R. 803(6)'s foundational requirements. *Edge*, 8th Dist. Cuyahoga No. 95215, 2011-Ohio-2148, at ¶ 16. Further, Hotz concedes that "the opinions [of Pujara, Wyrwas, and Payne] were within otherwise authenticated medical records." Appellee's brief at 12.

{¶ 21} The opinions and diagnosis of Wyrwas, Pujara, and Payne — nontestifying doctors — contained in medical records, and testified to by Brose satisfied Evid.R. 803(6)'s hearsay exception because they were contained in authenticated medical records and did not violate other evidentiary rules, and therefore, were admissible at trial. Further, Wyrwas, Pujara, and Payne's records were contained in the stipulated records that were submitted to the jury.

{¶ 22} The trial court did not abuse its discretion when it permitted Brose's testimony regarding Wyrwas, Pujara, and Payne's opinions and diagnosis.

### 3. Testimony regarding Dr. Donovan

{¶ 23} Hotz argues that the trial court erred when it allowed Brose to testify about Donovan's opinion. Specifically, Hotz argues he was prejudiced when the jury

---

[3] *See* joint stipulation filed with the trial court on October 15, 2018. Additionally, the parties agreed to the introduction of these medical records as trial exhibits. (Tr. 270-271.) Trial transcript is referenced throughout this opinion as "Tr. ____."

heard Donovan's opinion — a self-serving report that was not part of an authenticated hospital record — and Donovan was not subject to cross-examination.

{¶ 24} Donovan was hired in 2015 by Workers' Comp to review Hotz's medical records and determine whether Hotz's DVT was causally related to his work injury. Donovan's physician file review was not introduced at trial. (Tr. 270-271.)

{¶ 25} During direct examination, Brose testified that he agreed with Donovan's conclusions including that Hotz's DVT was not directly, causally related to the February 2013 work-related injury. (Brose tr. 60-63.) In support of his position, Brose read these comments from Donovan's physician file review:

> [W]ithin a reasonable degree of medical probability [the review] does not show, in my medical opinion, the injured worker's deep vein thrombosis left leg as being directly causally related to the industrial injury being reviewed.
>
> * * *
>
> Within a reasonable degree of medical probability [the review] does not show, in my medical opinion, the deep vein thrombosis left leg as having been substantially aggravated due to the work injury in this claim. Again, not evidence that it occurred previously. * * *

(Brose tr. 61-62.)

{¶ 26} Donovan did not testify at trial, was not subject to cross-examination, and his report was not introduced at trial. Yet, Brose testified regarding Donovan's physician file review and read excerpts of the review. The testimony regarding Donovan's physician file review is hearsay:

> "Hearsay" is a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Evid.R. 801.

{¶ 27} Hotz argues that because Donovan was a retained expert on behalf of Workers' Comp, his report was self-serving, untrustworthy, and unauthenticated, and was inadmissible, prejudicial hearsay. The City and Workers' Comp do not deny Brose's testimony regarding Donovan's opinion constituted the admission of hearsay, but challenge its introduction was harmless error. Our focus is whether the introduction of Brose's testimony regarding Donovan constituted harmless error.

{¶ 28} A court's error may be considered harmless if it does not affect the substantial rights of the parties. *Ford v. Sunbridge Care Ents.*, 2016-Ohio-1122, 62 N.E.3d 609, ¶ 19 (8th Dist.), citing *Cappara v. Schibley*, 85 Ohio St.3d 403, 709 N.E.2d 117 (1999). The erroneous admission of Brose's testimony regarding Donovan's report constituted harmless error because it was cumulative to other admissible evidence. *Id.*

{¶ 29} Brose was questioned extensively by plaintiff's counsel regarding Hotz's injuries. (Brose tr. 67-77.) Brose testified that Hotz suffered a severe shoulder injury on February 21, 2013. (Brose tr. 69-70.) Based upon Brose's review of Hotz's medical records, the medical history Brose obtained from Hotz, and the physical examination he performed of Hotz, Brose testified that his professional opinion, based upon a reasonable degree of medical certainty, was that Hotz did not develop DVT as a result of a workplace injury. (Brose tr. 63.) The jury heard Brose's testimony — and his opinion that Hotz's DVT was not causally related to the

February 2013 work-related incident — upon which they could base their defense verdict.

{¶ 30} Brose did not rely upon Donovan's physician review and conclusions to form his own opinion:

> [Defense counsel]: Okay. Also, did you need to rely on Dr. Donovan's physician review, in order to form your opinion of whether the deep vein thrombosis was caused by the injury of February 21, 2013.
>
> Brose: No.
>
> [Defense counsel]: You were able to form your own opinion based on the medical records?
>
> Brose: Yes.

(Brose tr. 66-67.)

{¶ 31} The record is devoid of any evidence that Brose relied upon Donovan's report to render his own expert opinion. Thus, Donovan's opinion that Hotz's DVT was not causally related to his work-related injury was cumulative and did not change the outcome of the trial.

{¶ 32} Based on the foregoing, Hotz's first assignment of error is overruled.

**B. Voir Dire**

{¶ 33} Hotz's second assignment of error argues that the trial court abused its discretion when it "severely limited [his] voir dire."

{¶ 34} The trial judge outlined her expectations of trial counsel during voir dire, instructing counsel not to indoctrinate the jurors as to the law or facts of the case. (Tr. 11-13.) If counsel violated the court's rules, the trial judge stated she would call counsel to the bench and chastise him or her. (Tr. 13.) If counsel committed a

second violation, the judge would simply say "thank you" to counsel who would then take a seat and the trial judge would conclude voir dire as she saw fit. (Tr. 13.)

{¶ 35} After committing a second violation of the trial court's voir dire requirements, Hotz's counsel was thanked by the trial judge and discontinued questioning the potential jurors. (Tr. 58-59.) Even though the trial judge prematurely suspended counsel's questioning, Hotz's counsel subsequently resumed participation in voir dire, dismissing jurors for cause and questioning newly proposed jurors. (Tr. 70-71; 76-132.) Hotz now argues that the trial court abused its discretion when Hotz's attorney was stopped from questioning potential jurists.

{¶ 36} A review of the record indicates that no objection was made, during trial, when the trial court ended Hotz's counsel's participation in voir dire. A failure to object waives all but plain error. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121-123, 679 N.E.2d 1099 (1997).

{¶ 37} Courts are reticent to apply plain error in civil matters:

> [i]n applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceeding.

*Id.* at 121, citing *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209, 436 N.E.2d 1001 (1982). Such exceptional circumstances are not presented in this case.

**{¶ 38}** Further, in addition to failing to object during voir dire, Hotz does not invoke the plain-error doctrine on appeal. Where a litigant fails to object at trial and fails to raise the plain-error doctrine on appeal, an appeals court need not consider the claim. *Ohio Valley Business Advisors, L.L.C. v. AER Invest. Corp.*, 8th Dist. Cuyahoga No. 104771, 2017-Ohio-1283, ¶ 19. A "court will not sua sponte undertake a plain-error analysis if a defendant fails to do so." *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 41.

**{¶ 39}** Accordingly, Hotz's second assignment of error is overruled.

**{¶ 40}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

RAYMOND C. HEADEN, JUDGE

PATRICIA ANN BLACKMON, P.J., and
ANITA LASTER MAYS, J., CONCUR